Filed 5/18/15

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S212157 |
| v. | ) | |
| | ) | Ct.App. 3 C070271 |
| JOSHUA CROSS, | ) | |
| | ) | Sacramento County |
| Defendant and Appellant. | ) | Super. Ct. Nos. 09F06395, |
| | ) | 11F03888 |
| _____ | ) | |

Penal Code section 273.5 defines various domestic violence crimes. Defendant Joshua Cross was charged with felony infliction of corporal injury in violation of section 273.5, subdivision (a) (hereafter section 273.5(a)). The information further alleged that Cross had suffered a prior conviction under section 273.5. At trial, Cross stipulated to the prior conviction, and the trial court accepted the stipulation without advising Cross of any trial rights or eliciting his waiver of those rights. The jury found Cross guilty of the charged offense under section 273.5(a) and also found true the prior conviction allegation. As provided in section 273.5, former subdivision (e) (now § 273.5, subd. (f)), Cross's prior conviction exposed him to a prison term of two, four, or five years instead of two, three, or four years. The trial court sentenced Cross to the maximum term of five years.

1

On appeal, Cross argues that, because his unwarned stipulation to the prior conviction had the direct consequence of subjecting him to a longer prison term, the stipulation was invalid under *In re Yurko* (1974) 10 Cal.3d 857 (*Yurko*). We agree and therefore conclude that Cross's sentence must be set aside.

**I.**

On May 20, 2011, Cross went to see the mother of his children at her apartment. In the course of a dispute, Cross slapped, punched, and choked her, resulting in a charge of felony infliction of corporal injury in violation of Penal Code section 273.5(a). (All undesignated statutory references are to the Penal Code.) A violation of section 273.5(a) is punishable by two, three, or four years in prison or up to one year in the county jail.

The information further alleged that Cross had previously been "convicted of the crime of spousal abuse in violation of Section 273.5 of the Penal Code, within the meaning of the [*sic*] Section 273.5(e)(1) of the Penal Code." Section 273.5 provides that "[a]ny person convicted of violating this section for acts occurring within seven years of a previous conviction under subdivision (a) . . . shall be punished by imprisonment in a county jail for not more than one year, or by imprisonment in the state prison for two, four, or five years, or by both imprisonment and a fine . . . ." (§ 273.5, former subd. (e)(1), as amended by Stats. 2007, ch. 582, § 1, p. 4894; see Stats. 2013, ch. 763, § 1 [redesignating former subd. (e)(1) as subd. (f)(1)]; hereafter section 273.5(f)(1).)

At trial, defense counsel stipulated that "[o]n January 15, 2010, [Cross] was convicted of a felony violation of Penal Code Section 273.5 . . . in relation to [a] domestic violence incident on August 14th of 2009." The trial court accepted this stipulation without advising Cross of any trial rights or the penal consequences of admitting a prior conviction.

2

A jury convicted Cross of violating section 273.5(a) and found true the allegation that he suffered the prior conviction. In light of the prior conviction, the trial court sentenced him to the maximum term of five years for his current section 273.5(a) offense.

On appeal, Cross challenged the true finding on the prior conviction allegation on the ground that he did not knowingly and voluntarily waive his trial rights before stipulating to the prior conviction. The Court of Appeal rejected Cross's argument and affirmed the sentence. Relying on *People v. Witcher* (1995) 41 Cal.App.4th 223 (*Witcher*) and declining to follow *People v. Shippey* (1985) 168 Cal.App.3d 879 (*Shippey*), the court concluded that "the stipulation to the existence of a prior conviction was not tantamount to admitting all the elements of an *enhancement*; rather, the existence of the prior conviction was instead a sentencing factor authorizing the trial court to impose a more severe *alternative sentencing scheme*. As a result, the trial court was not required to advise defendant of his fundamental trial rights and solicit waivers of them before giving effect to the stipulation." We granted review.

## II.

When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary. (See *Boykin v. Alabama* (1969) 395 U.S. 238, 243–244 (*Boykin*).) As a prophylactic measure, the court must inform the defendant of three constitutional rights — the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers — and solicit a personal waiver of each. (*People v. Howard* (1992) 1 Cal.4th 1132, 1179 (*Howard*); see *Boykin*, at pp. 243–244; *In re Tahl* (1969) 1 Cal.3d 122, 130–133 (*Tahl*).) Proper advisement and waiver of these rights, conducted with "the utmost solicitude of which courts are capable," are necessary

3

"to make sure [the accused] has a full understanding of what the plea connotes and of its consequence." (*Boykin*, at pp. 243–244.)

In *Yurko, supra*, 10 Cal.3d 857, we unanimously held that the same requirements of advisement and waiver apply when a defendant admits the truth of a prior conviction allegation that subjects him to increased punishment. The defendant in *Yurko* admitted, without adequate advisement or waiver, the truth of three prior felony convictions, resulting in an enhanced sentence of life imprisonment for his current first degree burglary offense. (*Id.* at p. 860 & fn. 1.) We explained: "Because of the significant rights at stake in obtaining an admission of the truth of allegations of prior convictions, which rights are often of the same magnitude as in the case of a plea of guilty, courts must exercise a comparable solicitude in extracting an admission of the truth of allegations of prior convictions. . . . As an accused is entitled to a trial on the factual issues raised by a denial of the allegation of prior convictions, an admission of the truth of the allegation necessitates a waiver of the same constitutional rights as in the case of a plea of guilty. The lack of advice of the waivers so to be made, insofar as the record fails to demonstrate otherwise, compels a determination that the waiver was not knowingly and intelligently made." (*Id.* at p. 863.) We concluded that "*Boykin* and *Tahl* require, before a court accepts an accused's admission that he has suffered prior felony convictions, express and specific admonitions as to the constitutional rights waived by an admission. The accused must be told that an admission of the truth of an allegation of prior convictions waives, as to the finding that he has indeed suffered such convictions, the same constitutional rights waived as to a finding of guilt in case of a guilty plea." (*Ibid.*)

We went on to say that a defendant must also be advised of "the full penal effect of a finding of the truth of an allegation of prior convictions." (*Yurko, supra*, 10 Cal.3d at p. 865.) We held "as a judicially declared rule of criminal

4

procedure" that an accused, before admitting a prior conviction allegation, must be advised of the precise increase in the prison term that might be imposed, the effect on parole eligibility, and the possibility of being adjudged an habitual criminal. (*Id.* at p. 864.)

In *Howard*, we reaffirmed *Yurko*'s requirements of "explicit admonitions and waivers." (*Howard*, *supra*, 1 Cal.4th at pp. 1178–1179.) But we clarified that *Yurko* error is not reversible per se. Instead, the test for reversal is whether "the record affirmatively shows that [the guilty plea] is voluntary and intelligent under the totality of the circumstances." (*Howard*, at p. 1175; see *People v. Mosby* (2004) 33 Cal.4th 353, 361–365 (*Mosby*) [applying *Howard*'s totality of the circumstances test].)

In addition, our case law since *Yurko* has drawn a distinction between, on one hand, "a defendant's admission of evidentiary facts which [does] not admit every element necessary to conviction of an offense or to imposition of punishment on a charged enhancement" and, on the other, "an admission of guilt of a criminal charge or of the truth of an enhancing allegation where nothing more [is] prerequisite to imposition of punishment except conviction of the underlying offense." (*People v. Adams* (1993) 6 Cal.4th 570, 577 (*Adams*).) The requirements of *Boykin-Tahl* and *Yurko* apply to the latter type of admission but not the former. (*Adams*, at pp. 580–583.)

In *Adams*, for example, we held that a mere stipulation to being on bail "does not admit the truth of . . . every fact necessary to imposition" of additional punishment under section 12022.1 and therefore "does not have the definite penal consequences necessary to trigger the *Boykin-Tahl* requirements." (*Adams*, *supra*, 6 Cal.4th at p. 580.) Similarly, in *People v. Newman* (1999) 21 Cal.4th 413 (*Newman*), we held that the *Boykin-Tahl* requirements did not apply to the defendant's stipulation to his status as a felon because "no penal consequences

5

flowed directly from the stipulation, and the prosecutor still was required to prove the remaining elements of the [felon in possession of a firearm] offense." (*Newman*, at p. 422.) *Adams* and *Newman* make clear that the *Boykin-Tahl* requirements do not apply to a stipulation of "evidentiary facts, even facts crucial to a conviction," if the stipulation does not encompass "all of the evidentiary facts necessary to imposition of the additional penalty." (*Adams*, at p. 582.)

With these principles in mind, we turn to the case before us.

## III.

At the outset, the Attorney General argues that Cross has forfeited his claim because he did not object to the lack of advisement and waiver at trial. Although the Attorney General did not raise this issue in the Court of Appeal (see Cal. Rules of Court, rule 8.500(c)(1)), it presents a "pure question[] of law, not turning upon disputed facts." (*People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 901, fn. 5.) Accordingly, we shall exercise our discretion to address the forfeiture issue before turning to the merits of Cross's claim.

## A.

In support of forfeiture, the Attorney General relies on *People v. Vera* (1997) 15 Cal.4th 269 (*Vera*), where we held that "[a]bsent an objection to the discharge of the jury or commencement of court trial, defendant is precluded from asserting on appeal a claim of ineffectual waiver of the statutory right to jury trial of prior prison term allegations." (*Id.* at p. 278.) We explained that the right to have a jury determine the truth of a prior conviction allegation "is derived from statute," not from the state or federal Constitution, and does not implicate any constitutional requirement of express and personal waiver. (*Vera*, at pp. 277–278; see § 1025.) A defendant is "therefore obligated to bring the alleged error to the attention of the trial court in order to preserve his claim for appellate review." (*Vera*, at p. 281.)

6

*Vera* is inapposite here, however, because the defendant in *Vera* did not admit the truth of a prior conviction allegation. Instead, Vera waived his statutory right to a jury trial in favor of a bench trial. (*Vera*, *supra*, 15 Cal.4th at p. 273.) We said the denial of a jury trial on the prior prison term allegations raised no due process concerns because Vera "does not assert, nor does the record in this case suggest, he was denied a *fair trial*." (*Id.* at p. 280; see *id.* at p. 281 ["[T]he substitution of a fair court trial for jury trial on a sentence enhancement allegation does not constitute a violation of federal due process."].) Thus, the forfeiture in *Vera* arose from the defendant's acquiescence to a bench trial instead of a jury trial, not from his acquiescence to no trial at all.

Notably, our opinion in *Vera* strongly implied that defendants have a due process right to receive a fair trial on the truth of prior prison term allegations. (See *Vera*, *supra*, 15 Cal.4th at p. 281 ["So long as defendant received a fair court trial on the truth of the prior prison term allegations . . . his claim of ineffectual waiver does not constitute a federal due process claim."]; *id.* at p. 280 ["[B]ecause defendant was afforded a fair determination of the truth of the prior prison term allegations by the trial court sitting as a trier of fact, he was afforded 'due process of law . . . .' "].) Although post-*Yurko* case law has clarified that there is no constitutional right to a *jury* trial on a prior conviction allegation (see *Vera*, at pp. 274, 277; *People v. Wiley* (1995) 9 Cal.4th 580, 589; *Almendarez-Torres v. United States* (1998) 523 U.S. 224), *Yurko* correctly concluded that "an accused is entitled to *a trial* on the factual issues raised by a denial of the allegation of prior convictions . . . ." (*Yurko*, *supra*, 10 Cal.3d at p. 863, italics added.) Indeed, it is well established that, while there is no single " 'best' recidivist trial procedure," due process requires "adequate notice" and "an opportunity to challenge the accuracy and validity of the alleged prior convictions." (*Spencer v. Texas* (1967) 385 U.S. 554, 567; see *Oyler v. Boles* (1962) 368 U.S. 448, 452 ["[A] defendant

7

must receive reasonable notice and an opportunity to be heard relative to the recidivist charge . . . ."].)  When a defendant forgoes this basic protection, his or her decision must be "knowingly and intelligently made." (*Yurko*, at p. 863.)  Cross's unwarned stipulation to the truth of the prior conviction allegation did not merely waive a jury trial; it waived any trial at all.

In this context, we find instructive our recent decision in *People v. Palmer* (2013) 58 Cal.4th 110, which held that the defendant did not forfeit a claim that the trial court violated section 1192.5 by making an inadequate inquiry into the factual basis for his guilty plea.  (*Palmer*, at p. 117.)  Palmer "waived a preliminary hearing and probation report, and he acknowledged having discussed the charge and defenses with his counsel as well as his satisfaction with the advice he received.  Defendant did not assert below that the procedure the trial court followed failed to satisfy section 1192.5, and he made no claim that the court or counsel should have identified a document or documents supporting the factual basis of the plea." (*Id.* at pp. 115–116.)  The Attorney General argued forfeiture, relying on *Vera*.  But we said that *Vera*'s "application in the present context would be inappropriate, given the prophylactic purpose behind the factual basis requirement, a purpose analogous to that behind the prophylactic advisements of applicable federal constitutional rights given a defendant before his or her guilty plea is taken, which 'helps ensure that the "constitutional standards of voluntariness and intelligence are met." ' ([Citation]; cf. *Boykin v. Alabama* (1969) 395 U.S. 238, 243 . . . .)" (*Palmer*, at p. 116.)  The same constitutional standards of voluntariness and intelligence apply when a defendant forgoes a trial on a prior conviction allegation.  (*Yurko*, *supra*, 10 Cal.3d at pp. 863, 865.)  Thus, just as Palmer could not forfeit his claim that the trial court should have ensured his plea was voluntary and knowing by inquiring into its factual basis, Cross cannot forfeit his claim that the trial court should have ensured his stipulation was

8

voluntary and knowing by advising him of his right to "a fair determination of the truth of the prior [conviction] allegation[]." (*Vera*, *supra*, 15 Cal.4th at p. 280.)

**B.**

We turn now to the merits of Cross's appeal. The Attorney General argues that this case is indistinguishable from *Adams*. In *Adams*, the defendant was charged with several theft-related crimes. (*Adams*, *supra*, 6 Cal.4th at p. 574, fn. 3.) The information alleged that he committed these offenses while "released from custody" under section 12022.1 pending trial for another crime. (*Adams*, at p. 574.) Adams stipulated that at the time he allegedly committed the theft-related offenses, he was " 'out of custody on his own recognizance, or on bail for other charges . . . .' " (*Ibid.*) The jury convicted him of the theft-related offenses and found the "on bail" allegation true. (*Id.* at p. 575.)

On appeal, Adams argued that the trial court was required to give him *Boykin-Tahl* admonitions before accepting his stipulation. We disagreed, explaining that Adams "stipulated only that he had been released on bail when the offense charged against him was committed. Before the enhanced penalty authorized by section 12022.1 could be imposed the People not only had to prove that defendant committed the secondary offense [i.e., the current charged offense], but also convict him or demonstrate that he had been convicted of the primary offense [i.e., the offense for which he was released on bail]." (*Adams*, *supra*, 6 Cal.4th at p. 582; see *id.* at p. 580 ["Unless he stipulates both to the bail/own recognizance element of the enhancement and that he is guilty of or has been convicted of the primary offense, his stipulation to the former will not necessarily lead to imposition of the enhanced penalties authorized by section 12022.1."].) Because Adams had stipulated only that he was on bail pending trial on another crime and not that he was guilty of that other crime, we concluded that his "stipulation that he was on bail was an ordinary evidentiary stipulation." (*Id.* at

9

p. 582.) The stipulation did not admit "every fact necessary to imposition of the additional punishment other than conviction of the underlying [theft-related] offense[s]" and therefore did "not have the definite penal consequences necessary to trigger the *Boykin-Tahl* requirements." (*Id.* at p. 580.)

Here, by contrast, section 273.5(f) authorized the trial court to impose a greater punishment on Cross if the jury found that he was guilty of the charged offense under section 273.5(a) and that he had previously been convicted of violating section 273.5. Cross stipulated that he had previously been "convicted of a felony violation of Penal Code Section 273.5." Because he admitted "every fact necessary to imposition of the additional punishment other than conviction of the underlying offense" (*Adams*, *supra*, 6 Cal.4th at p. 580), he was entitled to receive *Boykin-Tahl* warnings before he made this admission.

The Court of Appeal reasoned that Cross's "stipulation to the existence of a prior conviction was not tantamount to admitting all the elements of an enhancement; rather, the existence of the prior conviction was instead a sentencing factor authorizing the trial court to impose a more severe *alternative sentencing scheme*." But we do not see a meaningful distinction between an "enhancement" and an "alternative sentence scheme" in this context. Cross was sentenced to five years in prison under section 273.5(f). But for his stipulation to a previous conviction of another section 273.5(a) offense within the past seven years, Cross faced no more than four years in prison for his current section 273.5(a) offense. In *Adams*, we said that a stipulation has "definite penal consequences" if it establishes "every fact necessary" to support an "additional punishment." (*Adams*, *supra*, 6 Cal.4th at pp. 578, 580; accord, *People v. Newman*, *supra*, 21 Cal.4th at p. 421.) A stipulation may establish every fact necessary to support an increased punishment even if the trial court decides not to impose that punishment. Thus, our cases suggest that the phrase "definite penal consequences" means definite

10

*exposure* to additional punishment. Because the stipulation here established every fact necessary to expose Cross to a penalty beyond the four-year maximum term available under section 273.5(a), it resulted in a definite penal consequence. "[N]othing more was prerequisite to imposition of [the elevated] punishment except conviction of the underlying offense . . . ." (*Adams*, at p. 577.)

In so concluding, we follow the same approach as in *Yurko*, where we considered the "practical aspects" of admitting the truth of a prior conviction allegation. (*Yurko*, *supra*, 10 Cal.3d at p. 862.) We said: "The admission of the truth of the allegation of prior convictions has been differentiated from a plea of guilty through a characterization of the former as merely allowing a determination of a 'status' which can subject an accused to increased punishment. [Citations.] Although this may be technically correct, the distinction is meaningless if, as in the case of a plea of guilty, the accused nevertheless will be held to have waived, without proper protections, important rights by such an admission. Undoubtedly the particular rights waived by an admission of the truth of the allegation of prior convictions are important. Although there is not at stake a question of guilt of a substantive crime, the practical aspects of a finding of prior convictions may well impose upon a defendant additional penalties and sanctions which may be even more severe than those imposed upon a finding of guilt without the defendant having suffered the prior convictions." (*Ibid*.)

The Attorney General argues that *Yurko*'s requirement of advisement and waiver does not apply here because "[s]ection 273.5([f])(1) does not set forth an enhancement, i.e., a term of punishment in addition to the punishment set forth for an underlying offense." According to the Attorney General, section 273.5(f)(1) defines an "aggravated offense," and Cross's stipulation established only one element of the offense, leaving intact "his right to jury trial on the present aggravated offense in the same way as if he had stipulated to any other element,

11

such as whether the victim was his cohabitant, or whether he willfully inflicted corporal injury."

Were we to adopt this characterization of section 273.5(f)(1), however, it would follow that the sentencing provision at issue in *Yurko* also defined an "aggravated offense" or "alternative sentencing scheme," not an "enhancement." That provision read: " 'Every person convicted . . . of . . . burglary of the first degree . . . who shall have been previously three times convicted, upon charges separately brought and tried, and who shall have served separate terms therefor in any state prison . . . , of the crime of robbery, burglary . . . shall be adjudged an habitual criminal and shall be punished by imprisonment in the state prison for life.' " (*Yurko*, *supra*, 10 Cal.3d at p. 860, fn. 1, quoting former § 644, subd. (b).) We are unable to discern any relevant difference between that language and the language of section 273.5(f)(1): "Any person convicted of violating this section for acts occurring within seven years of a previous conviction under subdivision (a) . . . shall be punished by [among other options] . . . imprisonment in the state prison for two, four, or five years . . . ." Indeed, the two statutes are virtually parallel. But *Yurko* did not treat former section 644, subdivision (b) as a statute defining an aggravated offense, of which the prior convictions were merely one element. And *Yurko* did not parse whether former section 644, subdivision (b) specified an "enhancement" or an "alternative sentencing scheme." Such nomenclature played no role in our analysis. What mattered was that the defendant's unwarned admission of prior convictions automatically exposed him to "added penalties." (*Yurko*, at p. 863.)

The Court of Appeal relied on *Witcher*, *supra*, 41 Cal.App.4th 223, and declined to follow *Shippey*, *supra*, 168 Cal.App.3d 879. Both *Witcher* and *Shippey* involved an admission of a prior conviction allegation without *Yurko* advisements in the analogous context of section 666, which punishes petty theft

12

with a prior conviction.  In *Shippey*, the defendant admitted a prior misdemeanor, and the Attorney General sought to "distinguish the instant case from *Yurko* on the sole basis that *Yurko* involved a prior felony conviction."  (*Shippey*, at p. 888.)  The court held that *Yurko*'s rationale "does not appear to be so limited" (*Shippey*, at p. 888) and "is equally applicable to an admission of a prior misdemeanor conviction which may result in greatly increased potential punishment" (*id.* at p. 889).  "Proof of a prior under section 666 raises a misdemeanor crime punishable by a fine or county jail sentence to a felony punishable by imprisonment.  In the instant case this is certainly true.  Admitting the prior petty theft ultimately resulted in defendant's sentence to state prison for three years."  (*Id.* at p. 888.)  Applying *Yurko*, the *Shippey* court held that the defendant should have been advised of his trial rights and the consequences of his admission.  (*Id.* at p. 889.)

A decade later, the court in *Witcher* (without mentioning *Shippey*) found *Yurko*'s requirements inapplicable to the defendant's admission of two prior conviction allegations under section 666.  (*Witcher*, *supra*, 41 Cal.App.4th at pp. 233–234.)  There the defendant, through a lengthy colloquy with the trial court, indicated that he wished to admit the two prior convictions in order to foreclose the prosecution from presenting evidence of those prior convictions.  (*Id.* at pp. 228–231.)  During the colloquy, the trial court advised the defendant of his right to a jury trial, but he "was never advised of his privilege against compulsory self-incrimination and his right to confront his accusers," he "did not expressly waive those rights," and he "was never informed of the penal consequences of his admission of the priors."  (*Id.* at p. 231; see *id.* at p. 234 [under § 666, prior convictions "serve to raise a petty theft to a felony with attendant penal consequences"].)  Despite these "mistakes" (*id.* at p. 231), the *Witcher* court explained that "appellant's pretrial 'admission' of [the prior convictions] was, in

13

effect, a stipulation to their validity for the purpose of keeping them from the jury. Appellant has cited no authority for the proposition that a defendant must be admonished about his constitutional rights when he enters into such a self-serving stipulation, and we decline to create such authority. He has received the benefit of his bargain. The prosecution was not allowed to prove his prior felony convictions and incarcerations before the jury. We will not now countenance an after-the-fact contention that his stipulation did not meet minimum constitutional standards." (*Id.* at pp. 233–234.) We find this reasoning unpersuasive.

If, as the court in *Witcher* found, the defendant was not adequately apprised of his trial rights (*Witcher*, *supra*, 41 Cal.App.4th at p. 231) and, as a result, his admission "cannot be said to be 'knowing and voluntary' " (*id.* at p. 233), then he "received the benefit of his bargain" (*id.* at p. 234) only at a cost not fully known to him. In other words, although the trial court told the defendant what he was getting by stipulating to the prior convictions, the court did not make him fully aware of what he was giving up.

It may be that many defendants who admit a prior conviction do so in order to obtain some benefit. But the fact that a defendant may derive a benefit is not itself a sufficient reason to dispense with proper advisement. This court in *Yurko* was aware that "[t]here are many tenable reasons" why a defendant might "admit charges of prior convictions. For instance, when an accused admits priors they may not be alluded to in any way during trial except for impeachment purposes if he elects to testify. [Citations.] Further, a denial of priors would result not only in their existence being brought to the attention of the jury, but it would give undue emphasis to such priors as the People would then be required to submit proof thereof." (*Yurko*, *supra*, 10 Cal.3d at p. 866; cf. *Boykin*, *supra*, 395 U.S. at p. 240 ["Trial strategy may of course make a plea of guilty seem the desirable course."].) But such considerations had no bearing on our rationale for the necessity of

14

advisement.  (*Yurko*, at pp. 862–863.)  To be sure, the particular benefit sought by a defendant in admitting a prior conviction may reveal the extent of his awareness of his trial rights or the penal consequences of his admission.  For example, a desire to keep a prior conviction away from the jury demonstrates a defendant's awareness of the right to a jury trial.  But the mere fact of receiving a benefit, without more, does not preclude a defendant from claiming inadequate advisement.

The Court of Appeal in this case, noting that "unlike in *Witcher*, defendant's stipulation did not result in the benefit of keeping the facts of the prior conviction out of evidence," seized on a different aspect of *Witcher*'s reasoning.  *Witcher* observed that proof of prior convictions neither constitutes an element of the section 666 offense nor results in a sentencing enhancement under section 666 as it does under section 667, subdivisions (c), (d), and (e), and section 667.5, subdivision (b).  (*Witcher*, *supra*, 41 Cal.App.4th at pp. 226, 233–234.)  Relying on this taxonomy as well as other cases that have said (in the context of pleading requirements) that section 666 does not establish an enhancement or a substantive offense (see, e.g., *People v. Robinson* (2004) 122 Cal.App.4th 275, 281–282), the Court of Appeal here advanced the theory that section 273.5(f), like section 666, is an "alternative sentencing scheme" and, as such, does not implicate *Boykin*, *Tahl*, or *Yurko*.

It is true that some of our cases have distinguished between a sentence enhancement and an alternative sentencing scheme.  (See, e.g., *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 898–900; *People v. Acosta* (2002) 29 Cal.4th 105, 118–120.)  But we have also recognized that the distinction is not always relevant.  (See, e.g., *People v. Bouzas* (1991) 53 Cal.3d 467, 476–479 [repeatedly stating that § 666 specifies a sentencing "enhancement"].)  Neither *Witcher* nor the Court of Appeal in this case explained why the characterization of

15

section 666 or former 273.5(f)(1) as an "alternative sentencing scheme" and not an "enhancement" should make a difference from the standpoint of the substantive concerns animating our decision in *Yurko*. *Yurko* did not examine whether the statute at issue defined an enhancement or an alternative sentencing scheme; our concern was that the defendant's unwarned admission of prior convictions automatically exposed him to increased punishment. While seeking to acknowledge that Cross's stipulation likewise exposed him to increased punishment, the Court of Appeal said: "Merely because an alternative sentencing scheme has the same *effect* as an enhancement does not mean it must be treated the same way" for purposes of advisement and waiver. We conclude, to the contrary, that *Yurko* applies precisely because section 273.5(f)(1) has the same *effect* as an enhancement: It makes the admission of a prior conviction, by itself, a sufficient "prerequisite" for increased punishment, with "nothing more" required "except conviction of the underlying offense." (*Adams*, *supra*, 6 Cal.4th at p. 577.) Because *Witcher*'s reasoning led the Court of Appeal to err, we disapprove *Witcher*, *supra*, 41 Cal.App.4th 223, to the extent it is inconsistent with this opinion, and our citation to *Witcher* with approval in *Newman*, *supra*, 21 Cal.4th 421, 423, should no longer be followed.

As noted, *Yurko* was decided before our cases clarified that the right to a jury trial on a prior conviction allegation "is derived from statute" and not from the state or federal Constitution. (*Vera*, *supra*, 15 Cal.4th at p. 274.) Since then, we have not decided the precise contours of the advisement that is constitutionally required in this context. (Cf. *Mosby*, *supra*, 33 Cal.4th at p. 360 ["When trial is required by statute, we shall assume . . . that a defendant's due process trial rights, at least under our state Constitution, encompass the rights to remain silent and to confront witnesses."].) We need not do so in this case either. At a minimum, Cross was entitled to be advised of his right to a fair determination of the truth of

16

the prior conviction allegation. Without such advisement, Cross "waived, without proper protections, important rights by [his] admission" of the prior conviction. (*Yurko*, *supra*, 10 Cal.3d at p. 862.)

While leaving for another day what additional advisements are constitutionally required, we take this opportunity to affirm the judicially created rule of criminal procedure requiring full *Boykin-Tahl* advisements for all guilty pleas in criminal trials regardless of whether the defendant's rights are derived from statute or from the state or federal Constitution. (See *Mosby*, *supra*, 33 Cal.4th at pp. 359–360; *Yurko*, *supra*, 10 Cal.3d at p. 864 & fn. 7.) Adherence to this rule will provide a measure of certainty and uniformity for the trial courts.

**IV.**

The failure to properly advise a defendant of his or her trial rights is not reversible "if the record affirmatively shows that [the admission] is voluntary and intelligent under the totality of the circumstances." (*Howard*, *supra*, 1 Cal.4th at p. 1175.) In *Howard*, we found a knowing and voluntary waiver despite a lack of advisement because the record "affirmatively demonstrate[d] that defendant knew he had a right not to admit the prior conviction and, thus, not to incriminate himself. The court specifically informed defendant that he had a right to force the district attorney to prove the prior conviction in a trial and that, in such a trial, he would have the rights to a jury and to confront adverse witnesses." (*Id.* at p. 1180.) In *Mosby*, *supra*, 33 Cal.4th 353, 361, we clarified that in applying the totality of the circumstances test, a reviewing court must "review[] the whole record, instead of just the record of the plea colloquy," and that "previous experience in the criminal justice system is relevant to a recidivist's ' "knowledge and sophistication regarding his [legal] rights" ' " (*id.* at p. 365).

17

Here, the record contains no indication that Cross's stipulation was knowing and voluntary, and the Attorney General does not contend otherwise. After counsel read the stipulation in open court, the trial court immediately accepted it. The court did not ask whether Cross had discussed the stipulation with his lawyer; nor did it ask any questions of Cross personally or in any way inform him of his right to a fair determination of the prior conviction allegation. (Cf. *Mosby*, *supra*, 33 Cal.4th at pp. 357–358.) The stipulation occurred during the prosecutor's examination of the first witness in the trial; the defense had not cross-examined any witness at that point. (Cf. *id.* at p. 364.) Further, we have no information on how the alleged prior conviction was obtained. (Cf. *id.* at p. 365.) Even if the complaint's express mention of "Section 273.5([f])(1) of the Penal Code" was sufficient to put Cross on notice of the penal consequence of his stipulation, nothing in the record affirmatively shows that Cross was aware of his right to a fair determination of the truth of the prior conviction allegation. Accordingly, Cross's stipulation must be set aside.

## CONCLUSION

For the reasons above, we reverse the Court of Appeal's judgment affirming the true finding on the prior conviction allegation and the five-year sentence. In all other respects, we affirm the Court of Appeal's judgment, and we remand for further proceedings not inconsistent with this opinion.

**LIU, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**WERDEGAR, J.**
**CHIN, J.**
**CORRIGAN, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

18

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Cross

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 216 Cal.App.4th 1403
**Rehearing Granted**


_____

**Opinion No.** S212157
**Date Filed:** May 18, 2015

_____

**Court:** Superior
**County:** Sacramento
**Judge:** Greta Fall


_____

**Counsel:**

John Hargreaves, under appointment by the Supreme Court, and William W. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez, David Andrew Eldridge and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

1

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

John Hargreaves
Central California Appellate Program
2150 River Plaza Drive, Suite 300
Sacramento, CA  95833
(916) 441-3792

Catherine Tennant Nieto
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  94244-2550
(916) 323-6307