Filed 7/30/15  P. v. Trail CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>ISIAIH THOMAS TRAIL,<br><br>        Defendant and Appellant. | A136726<br><br>(San Mateo County<br> Super. Ct. No. SC075611A) |

After a jury trial, defendant Isiaih Thomas Trail was found guilty of various felony offenses committed against the victim, his spouse and the mother of his child: assault with a semi-automatic firearm (Pen. Code, § 245, subd. (b)[1]) (count one); criminal threats (§ 422), while personally using a semi-automatic firearm (§§1203.06, subd. (a)(1), 12022.5, subd. (a)) (count two); assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4)) (count four); infliction of corporal injury (§ 273.5, subd. (a); hereafter § 273.5(a)) (count five); false imprisonment (§ 236) (count six); and criminal threats (§ 422) (count seven). [2]  The jury also found defendant guilty of possession of a

---

[1]     All further unspecified statutory references are to the Penal Code.

[2]     The jury was unable to reach a verdict on a separate offense of assault with a deadly or dangerous weapon (a knife) (§ 245, subd. (a)(1)) (count eight) and failed to make any finding as to the personal use of a deadly or dangerous weapon special allegation attached to count seven (making criminal threats).  On the People's motion, the court dismissed count eight and the personal use of a deadly or dangerous weapon special allegation attached to count seven.

1

firearm by a felon (§ 29800, subd. (a)(1)) (count three). Defendant was sentenced to an aggregate term of nine years and eight months in state prison.

On appeal, defendant contends: (1) the trial court abused its discretion in denying his request to represent himself; (2) the trial court failed to sua sponte instruct on unanimity relative to the count seven criminal threats offense; (3) the trial court failed to apply section 654 to stay the sentence imposed on the count seven criminal threats conviction; and (4) the court improperly enhanced the sentence imposed on his conviction for infliction of corporal injury (§ 273.5(a)) (count five) based on an allegation that he had suffered a prior section 273.5(a) conviction. We find no merit to defendant's contentions, save his last contention of a sentencing error. Specifically, we agree with defendant that the sentence imposed on his conviction for infliction of corporal injury (§ 273.5(a)) (count five) must be vacated and the matter remanded to the trial court for a new adjudication of the prior conviction allegation attached to count five, either by admission or trial, and for resentencing. In all other respects, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

At a jury trial in August 2012 the following relevant evidence was elicited.

### A. Prosecution's Case

In 2006 or 2007, defendant and the victim met and began a dating relationship. They had a child in 2008, later married in 2009, and then moved to Las Vegas. Sometime in 2009 or 2010, the couple lost custody of their child who was ultimately placed with the victim's mother in the Bay Area. The victim left defendant and she moved back to the Bay Area in December 2011. Defendant soon followed and he and the victim lived an apartment in the Bay Area. The victim obtained employment as a dancer at a club.

The current criminal charges filed against defendant were based on a series of incidents between defendant and the victim that took place in their Bay Area apartment

2

over a two-day period in March 2012.[3] On March 15, defendant confronted the victim in the living room, and at first falsely accused her of sleeping with their neighbor. Defendant then pointed a .380-caliber Ruger semiautomatic firearm at the victim, and said, "Tell me the truth or I will shoot you." The victim replied, "I am going to tell the truth. If you are going to shoot me, just shoot me." Although she could not tell if the gun was loaded, the victim believed at that time that defendant might shoot and kill her. In the past defendant had hit her with the gun. For approximately five minutes, defendant continued to point the gun at her and threaten to kill her if she did not tell the truth. At some point defendant put down the gun and went into the kitchen. He returned to the living room, armed with a kitchen knife, and said, "Tell me the truth bitch or I will stab you." Defendant came toward the victim and stood over her holding the knife for approximately 15 seconds. The victim was scared that defendant was going to stab her. She screamed and threw a blanket over her head. Defendant then choked the victim for about 30 seconds until she was able to free herself. She told him she was sorry and remained quiet because her screaming had upset him. Later that night, the victim went to work and then returned to the apartment.

The next day, defendant sent the victim to purchase drugs. She was unable to make the purchase and returned without any drugs. Defendant became enraged and started to chase her around the apartment. She ran in and out of the apartment several times. When she returned on one occasion, defendant grabbed her, threw her on the floor, and kicked her in the face leaving a mark (abrasion or bruise) on her face. Later that night, the victim went to work. She was asked about the mark on her face by her fellow workers and "Kenny[4]." When the victim left work, she decided not to return to the apartment.

---

[3]    At the end of the trial, the parties stipulated that all of the charged offenses took place on March 15, 2012, save for one incident that took place on March 16, 2012, which was the subject of count five (infliction of corporal injury in violation of section 273.5(a)).

[4]    The victim identified Kenny as an "assistant" manager at the club.

Two days later, on March 18, 2012, the victim reported defendant's assaultive conduct to the police. She said defendant had threatened her with a Ruger semiautomatic pistol and the gun would be in the apartment. She did not mention a knife, but she said something about being afraid of being stabbed by defendant. Both the prosecution and defense introduced into evidence photographs taken by the police on March 18. The victim testified that two photographs depicted an injury on the upper portion of her forehead and on the bridge of her nose, and two additional photographs, which were supposed to "depict" scratch marks on her neck, "did not come out very well." She stated the injuries that were depicted in the photographs had been caused by defendant's earlier assaultive conduct. During a March 18, 2012, search of the apartment shared by defendant and the victim, the police found the clip or magazine for a .380-caliber Ruger, but not the actual gun. The police also found a .22 revolver in a suitcase containing men's clothing; that gun was the subject of count three charging defendant with possession of a firearm by a felon.

## B.     Defense Case

Defendant did not testify at trial. Kenneth Gini, the manager of the club where the victim worked, testified that he did not notice an abrasion or mark on the victim's face, as depicted in the photographs taken by the police on March 18, 2012.

## DISCUSSION

## I.     Defendant's Right to Self-Representation

Defendant argues the trial court abused its discretion in denying his request to represent himself. For the reasons we now discuss, we conclude his claim of error is unavailing.

## A.     Relevant Facts

At the preliminary hearing on April 18, 2012, defendant appeared represented by "private defender appointed" counsel. The following month, defendant was arraigned on the information and entered a plea of not guilty. At a pre-trial conference, the court scheduled a hearing on defendant's motion for the appointment of new counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). However, defendant withdrew his

4

*Marsden* motion on the scheduled hearing date. The jury trial commenced on August 13, 2012, at which time defendant appeared and was represented by his appointed counsel. The first two days of trial consisted of pretrial proceedings, jury selection, and the jury's receipt of introductory instructions by the court.

On the third day of trial, August 15, 2012, the prosecutor gave his opening statement and defense counsel reserved the right to make an opening statement. The prosecution commenced its case by calling as its first two witnesses, defendant's former live-in girlfriend and a police officer. The witnesses gave testimony concerning a prior 2006 domestic violence incident between defendant and the girlfriend, which resulted in defendant pleading no contest to one count of infliction of corporal injury in violation of section 273.5(a). During the girlfriend's testimony, defendant blurted out that he needed a better defense and he needed a lawyer. The court admonished defendant regarding his conduct. At the request of defense counsel, the court instructed the jury to ignore defendant's outburst. Following the police officer's testimony, defendant again blurted out that he needed someone to fight for him. The court immediately recessed the trial to talk to defendant outside the presence of the jury and the prosecutor.

At a closed hearing, defendant expressed his concerns about his appointed counsel's conduct during the examination of the first two witnesses and counsel's prospective ability to try the case. In response to the court's questions, defense counsel confirmed he had difficulty working with defendant, but counsel had discussed the case with defendant and counsel was prepared to try it. Defense counsel concluded his remarks by noting he was not sure whether defendant was "trying to engineer something or maneuver something," or if defendant wanted to represent himself. Defendant then blurted out, "I feel more comfortable me sending my own self to jail." The court engaged defendant in the following colloquy: "[¶] The Court: Have you ever represented yourself before? [¶] The Defendant: No, I think it is foolish. [¶] The Court: Have you ever had a jury trial before? [¶] The Defendant: No." [¶] The Court: What is the extent of your education in school? [¶] The Defendant: High school. [¶] The Court: Did you graduate from high school? [¶] The Defendant: Yes." Without further comment, the court ruled:

5

"Well, I am going to deny the *Marsden* motion, as I understand it, at this time, and I am going to deny any requests, I don't think that you can adequately represent yourself at this time, and I believe that [defense counsel] and the investigator are capable of doing the best possible job for you at this time, based on what I have heard, the contact that they have had with you and the communication of the various issues in this case." The trial was reconvened and proceeded to its conclusion without any further outbursts or requests by defendant to either represent himself or for new counsel.

## B. Analysis

"Criminal defendants who wish to act as their own attorneys have a constitutional right to do so. (*Faretta v. California* [(1975)] 422 U.S. 806 [(*Faretta*)]; *People v. Jones* (1991) 53 Cal.3d 1115, 1141 [282 Cal.Rptr. 465, 811 P.2d 757].) To invoke that right, however, a defendant ' " 'should make an unequivocal assertion of that right . . . ' " ' (*People v. Horton* (1995) 11 Cal.4th 1068, 1107 [47 Cal.Rptr.2d 516, 906 P.2d 478], italics in original.)" (*People v. Hines* (1997) 15 Cal.4th 997, 1028; see *People v. Marshall* (1997) 15 Cal.4th 1, 23 (*Marshall*).) As one court has observed: "[T]he right of self-representation is waived unless defendants articulately and unmistakably demand to proceed pro se." (*United States v. Weisz* (D.C. Cir. 1983) 718 F.2d 413, 426.)

"*Faretta*'s emphasis 'on the defendant's knowing, voluntary, unequivocal, and competent invocation of the right suggests that an insincere request or one made under the cloud of emotion may be denied.' (*Marshall, supra*, 15 Cal.4th at p. 21.) '[A] motion made out of a temporary whim, or out of annoyance or frustration, is not unequivocal—even if the defendant has said he or she seeks self-representation.' (*Marshall*, at p. 21; *id*. at p. 23 ['A motion for self-representation made in passing anger or frustration . . . may be denied']; *Reese v. Nix* (8th Cir. 1991) 942 F.2d 1276, 1281 [the defendant's statement, 'Well, I don't want no counsel then' was not a clear and unequivocal invocation of his right to self-representation]; *Jackson v. Ylst* (9th Cir. 1990) 921 F.2d 882, 888-889 [the defendant's statement ' "I want to fight in pro per then. Relieve him and I do this myself," ' was an 'impulsive response to the trial court's denial of his request for substitute counsel,' and 'did not demonstrate unequivocally that he

6

desired to represent himself']; *id.* at p. 888 ['trial court properly may deny a request for self-representation that is "a momentary caprice or the result of thinking out loud" '].)" (*People v. Danks* (2004) 32 Cal.4th 269, 295-296.) We review "de novo" to determine whether defendant unequivocally invoked his right to self-representation. (*Id.* at p. 295.)

An examination of the record discloses that almost the entirety of the closed hearing on August 15, 2015, consisted of defendant's complaints about his counsel's courtroom conduct. Defendant made repeated requests for new counsel but made no explicit request to represent himself. It was only near the end of the hearing that the issue of self-representation was first raised by defense counsel, apparently prompting defendant to blurt out, "I feel more comfortable me sending my own self to jail." In an effort to clarify defendant's position, the court asked defendant if he had ever represented himself, and he replied, "No. I think it is foolish." After further questioning, the court ultimately denied defendant's request, characterized as one for self-representation.

We conclude the trial court's ruling does not warrant reversal. Defendant's statements at the closed August 15, 2012, hearing "do not constitute an unequivocal invocation of the right of self-representation simply because the trial court described the motion as one for self-representation, or because the trial court failed to make an express finding on the record that the request was equivocal, insincere, or made for the purpose of delay." (*Marshall, supra*, 15 Cal.4th at p. 25.) As explained by our Supreme Court, "the court's duty goes beyond determining that some of defendant's words amount to a motion for self-representation. The court should evaluate all of a defendant's words and conduct to decide whether he or she truly wishes to give up the right to counsel and represent himself or herself and unequivocally has made that clear." (*Id.* at pp. 25-26.)

When we examine the record of the hearing at which defendant assertedly invoked his right of self-representation, we cannot say his blurted-out statement was "a sincere desire to forego counsel and represent himself." (*Marshall, supra*, 15 Cal.4th at p. 25.) Rather, when defendant's statement is viewed in the context of the entire hearing, we conclude his statement referencing self-representation is an ambivalent " 'impulsive response' " uttered in frustration and annoyance. (*People v. Barnett* (1998) 17 Cal.4th

7

1044, 1087; see *Marshall, supra*, 15 Cal.4th at p. 25 [citing to "*State v. Williams* [(1993) 334 N.C. 440 [434 S.E.2d 588, 595-597], reaffirmed 339 N.C. 1 [452 S.E.2d 245, 253] following remand by United States Supreme Court on another point] [defendant's words and actions rendered his motion equivocal; reviewing court approved the denial of a motion for self-representation even though the trial court clearly treated defendant's motion as a *Faretta* motion and rejected it on other, improper grounds]".) Because defendant never unequivocally invoked his *Faretta* right to represent himself, we conclude his claim of error fails.

## II. Trial Court's Failure to Give Unanimity Instruction Relative to the Offense of Criminal Threats (Count Seven)

Defendant argues the trial court had a sua sponte duty to instruct the jury on unanimity using the language in CALCRIM No. 3502,[5] with respect to the criminal threats offense as alleged in count seven. We conclude defendant's contention is unavailing.

"When an accusatory pleading charges the defendant with a single criminal act, and the evidence presented at trial tends to show more than one such unlawful act, either the prosecution must elect the specific act relied upon to prove the charge to the jury, or the court must instruct the jury that it must unanimously agree that the defendant committed the same specific criminal act. (*People v. Gordon* (1985) 165 Cal.App.3d 839, 853 [212 Cal.Rptr. 174].) The duty to instruct on unanimity when no election has been made rests upon the court sua sponte. (*People v. Salvato* (1991) 234 Cal.App.3d 872, 880 [285 Cal.Rptr. 837].) Because jury unanimity is a constitutionally based concept, '. . . the defendant is entitled to a verdict in which all 12 jurors concur, beyond a reasonable doubt, as to each count charged.' (*People v. Jones* (1990) 51 Cal.3d 294, 305

---

5    CALCRIM No. 3502 reads:  "You must not find the defendant guilty of <insert name of alleged offense> [in Count ___ ] unless you all agree that the People have proved specifically that the defendant committed that offense [on] < insert date or other description of event relied on>. [Evidence that the defendant may have committed the alleged offense (on another day/ [or] in another manner) is not sufficient for you to find (him/her) guilty of the offense charged.]"

[270 Cal.Rptr. 611, 792 P.2d 643].) From this constitutional origin, the principle has emerged that if the prosecution shows several acts, each of which could constitute a separate offense, a unanimity instruction is required. (*People v. Melendez* (1990) 224 Cal.App.3d 1420, 1428 [274 Cal.Rptr. 599] [disagreed with on other grounds in *People v. Hernandez* (1995) 34 Cal.App.4th 73 [40 Cal.Rptr.2d 223] and others].) [¶] . . . By giving the unanimity instruction the trial court can ensure that a defendant will not be convicted when there is no agreement among the jurors as to which single offense was committed. (See [*People v.*] *Sutherland* [(1993) 17 Cal.App.4th 602,] 612, and cases there cited.)" (*People v. Melhado* (1998) 60 Cal.App.4th 1529, 1534 (*Melhado*).)

Defendant argues the jurors were not sufficiently informed that the factual basis for count seven was limited to alleged threats to stab the victim, and therefore, they may have relied on evidence of defendant's multiple threats to kill the victim while personally using a firearm to convict him of count seven. We disagree. As we now discuss, the record before us demonstrates that the prosecutor elected the specific acts to prove the criminal threats alleged in count seven.

The prosecutor filed an information alleging two counts of criminal threats with weapon-use allegations attached to each count. Specifically, the information alleged that "in the commission or attempted commission" of the criminal threats, as charged in count two, defendant personally used "a firearm, Ruger .380 semi-automatic." The information also alleged that "in the commission or attempted commission" of the criminal threats, as alleged in count seven, defendant personally used "a deadly or dangerous weapon, to wit: a knife." During her opening statement, the prosecutor gave a brief explanation of the charges, referring to "criminal threats with the use of a gun. He said, I will kill you if you don't tell me, if you don't admit that you are cheating on me;" and "threats with the use of a knife. So, two threat[ ] . . . charges, one with a gun, [one] with a knife, both during the same evening." Defendant concedes that the prosecutor's opening statement evidences an election of the evidence of defendant's criminal threats to use a knife against the victim as the specific factual basis for count seven. He argues, however, that the prosecutor, in her closing argument, never again communicated that election to the

9

jury. Not so. During her closing argument, the prosecutor again identified the evidence that formed the basis for the allegations in counts two and seven. She referenced the victim's testimony as to defendant's threats to kill her while personally using a firearm and defendant's threat to stab her while personally using a deadly or dangerous weapon in the form of a knife. Following a brief explanation of some of the elements of the offense, applicable to both counts two and seven, the prosecutor addressed the related weapon-use special allegations. The prosecutor explicitly advised the jury, "Now, there are weapon enhancements attached to each of these counts. *One of the criminal threats counts relates to when he threatened her with a gun; one relates to threatening her with a knife*, and there are different allegations, and you have to find true or not true as for each of them." (Italics added.) In discussing the personal use of a firearm special allegation, the prosecutor confirmed, "[t]his is related to the count when he held the gun and threatened her, saying that he was going to kill her." In discussing the personal use of a deadly or dangerous weapon special allegation, the prosecutor similarly confirmed, "use of the knife attaches to count seven. . . . I have to prove displayed in a menacing manner. It was not sitting on the table in the kitchen, he was holding it over her as if he was going to stab [her] while she was lying on the couch. It has to be an inherently dangerous weapon. Not a lot of question that a knife, if used in a certain way, is an inherently dangerous weapon." At no time did the prosecutor argue that the jurors could find defendant guilty of count seven based on a finding that defendant had made multiple threats to kill the victim while personally using a firearm. Nor did defense counsel ever suggest that there might be uncertainty as to the specific factual support for the criminal threats as alleged in counts two and seven. We also note that in the court's final instructions, and the verdict forms, the jurors were advised, in pertinent part, that "[i]f you find the defendant guilty of the crime charged in count two, you must then decide whether the People have proved the additional allegation that the defendant personally used a firearm during the commission of that crime," and "[i]f you find the defendant guilty of the crime charged in count seven, you must then decide whether the People have

10

proved the additional allegation that the defendant personally used a deadly or dangerous weapon during the commission of that crime."

We reject defendant's additional argument that an unanimity instruction was required because the jurors asked to rehear certain testimony and the jurors failed to reach a verdict on a separate charge of assault with a knife and make any finding as to the personal use of a deadly or dangerous weapon-use allegation attached to count seven. During deliberations, the jury asked to rehear the victim's "testimony related to knife and stabbing," and her "struggle related to the knife," and the testimony "in particular [of] Officer Morgan's investigation" regarding "when [the victim] discussed a fear of stabbing, and we wanted the wording of that." The juror's requests and verdicts demonstrate that the jurors understood they could find defendant guilty of making criminal threats, as alleged in count seven, despite their inability to agree that defendant personally used a deadly or dangerous weapon (in the form of a knife) when he made the threats.

Because the jury was sufficiently informed as to the specific factual basis for the criminal threats alleged in count seven, the trial court was not required to sua sponte instruct the jury on unanimity with regard to that count. [6] Accordingly, defendant's claim of error fails.

### III. Trial Court's Failure to Apply Section 654 to Stay the Sentence Imposed on the Count Seven Criminal Threats Conviction

#### A. Relevant Facts

In pre-sentence memoranda, both the prosecutor and defense counsel addressed the application of section 654. [7] Defense counsel specifically argued that, under section

---

[6]     Despite defendant's argument to the contrary, our decision in *Melhado, supra*, 60 Cal.App.4th 1529, is factually inapposite to this case (*id.* at pp. 543-544), and, therefore, does not support reversal here.

[7]     Section 654, subdivision (a), provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or

11

654, the court could not impose multiple sentences for those convictions (counts one and two, and counts four through seven) because those offenses had all been committed incident to only one objective, i.e., defendant's intent to "control" the victim "through domestic violence." The prosecutor argued, in pertinent part, that the court could impose separate sentences on the two criminal threats convictions because each offense was a separate and distinct occurrence for which punishment was appropriate and not barred by section 654.

In imposing sentence, the trial court selected the count two criminal threats conviction as the principal term, and imposed two years (middle term) on that conviction, plus four years (middle term) for the related true finding that defendant personally used a semi-automatic firearm during the commission of that offense. The court stayed the sentences to be imposed on count one (assault with a firearm) and count six (false imprisonment) under section 654. The court imposed consecutive sentences on the remaining counts, including an additional term of eight months (one-third of the middle term of two years) on the count seven criminal threats conviction. The court did not comment on its reasons for imposing separate sentences on the two criminal threats convictions.

**ANALYSIS**:

"[S]ection 654 'literally applies only where [multiple] punishment arises out of multiple statutory violations produced by the "same act or omission." ' (*People v. Harrison* [(1989)] 48 Cal.3d 321, 335 [(*Harrison*)].) But decisions interpreting section 654 have extended its protection 'to cases in which there are several offenses committed during "a course of conduct deemed to be indivisible in time." [(*People v. Beamon* (1973) 8 Cal.3d 625, 639 (*Beamon*).)]' ([*Harrison, supra,*] 48 Cal.3d at p. 335; *People v. Latimer* [(1993)] 5 Cal.4th 1203, 1207-1209 [(*Latimer*)].)" (*People v. Hicks* (1993) 6 Cal.4th 784, 791.) California decisions also make clear, however, that "a course of conduct, divisible in time, although directed to one objective, may give rise to multiple

omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other."

violations and punishment." (*Beamon, supra,* 8 Cal.3d at p. 639, fn. 11; see *People v. Felix* (2001) 92 Cal.App.4th 905, 915 (*Felix*).)  In evaluating a trial court's implicit finding on the application of section 654, we will uphold the ruling "if it is supported by substantial evidence." (*People v. Blake* (1998) 68 Cal.App.4th 509, 512 (*Blake*).)[8]

Defendant argues that the trial court's imposition of separate sentences on the two criminal threats convictions violates section 654 because he committed those offenses with the same criminal objective and as part of an indivisible course of conduct against the same victim in a very short time during a single domestic violence incident. However, the trial court could reasonably find that defendant's threats to kill the victim while personally using a firearm (count two) and the later criminal threats to stab the victim (count seven), were not "spontaneous or uncontrollable," but were separated by a sufficient period of time during which defendant had the opportunity to reflect and break off his efforts to threaten the victim but failed to do so.  (*People v. Trotter* (1992) 7 Cal.App.4th 363, 368 [reviewing court upheld imposition of separate consecutive sentences on two assault convictions where defendant fired two shots a minute apart at the victim]; see *Latimer, supra*, 5 Cal.4th at p. 1212 [defendant's similar but consecutive objectives permits multiple convictions and punishments].)  By imposing consecutive terms on the two criminal threats convictions, the trial court here impliedly found that defendant "harbored a separate intent and objective for each offense." (*Blake, supra*, 68 Cal.App.4th at p. 512.)  Relying on the circumstance that "each offense created a new risk of harm" (*Felix, supra,* 92 Cal.App.4th at p. 915), the trial court could reasonably determine that "[d]efendant should . . . not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his . . . [threatening] behavior." (*Harrison, supra,* 48 Cal.3d at p. 338.)

---

[8]   " 'It is well settled . . . that the court acts in "excess of its jurisdiction" and imposes an "unauthorized sentence" when it erroneously stays or fails to stay execution of a sentence under section 654' and therefore a claim of error under section 654 is nonwaivable. (*People v. Scott* (1994) 9 Cal.4th 331, 354, fn. 17 [36 Cal.Rptr.2d 627, 885 P.2d 1040].)" (*People v. Le* (2006) 136 Cal.App.4th 925, 931.)

Because substantial evidence supports the trial court's implicit finding that section 654 did not apply to the two criminal threats convictions, we must uphold the imposition of separate sentences on those convictions.  Accordingly, defendant's claim of error fails.

**IV.    Trial Court's Imposition of Enhanced Sentence on Conviction for Infliction of Corporal Injury in Violation of Section 273.5(a) (Count 5)**

In count five of the information, defendant was charged with the felony offense of infliction of corporal injury in violation of section 273.5(a) committed on or about March 16, 2012.  It was further alleged that within seven years of the date of the charged offense, "on or about May 16, 2006," defendant had suffered a prior conviction in violation of section 273.5(a), pursuant to "section 273.5 [former] subdivision (e)(1) [now subdivision (f)(1)]" (hereafter also referred to as the "prior conviction allegation"). [9]

Before the taking of any testimony at trial, defense counsel stipulated to the truth of the prior section 273.5(a) conviction for the purpose of satisfying the prior felony conviction element of the offense of possession of a firearm by a felon as alleged in count three.  But, nothing was explicitly said either before or during trial about the prior conviction allegation attached to count five.  And, neither the jury nor the trial court were asked to make any finding regarding the prior conviction allegation attached to count five.  In his presentence memorandum defense counsel indicated the possible sentence that the court could impose on the current section 273.5(a) conviction "(with admitted prior)."  At the sentencing hearing, in response to the court's inquiry, the prosecutor and defense counsel confirmed their understanding that defendant had earlier stipulated to the truth of the prior section 273.5(a) conviction.  The court imposed an enhanced sentence of one year and four months (one-third of the middle term of four years) for the current

---

[9]     Section 273.5 provides that a violation of subdivision (a) of the section is punishable by two, three, or four years in prison or up to one year in county jail.  Section 273.5 further provides that "[a]ny person convicted of violating this section for acts occurring within seven years of a previous conviction under subdivision (a) . . . shall be punished by imprisonment in a county jail for not more than one year, or by imprisonment in the state prison for two, four, or five years, or by both imprisonment and a fine . . . ."  (See § 273.5, former subd. (e)(1), as amended by Stats. 2007, ch. 582, § 1, p. 4894; see Stats. 2013, ch. 763, § 1 [redesignated former subd. (e)(1) as subd. (f)(1)].)

14

section 273.5(a) conviction based on the stipulation that defendant had suffered a prior section 273.5(a) conviction.

We conclude the sentence imposed on the current section 273.5(a) conviction (count five) must be reversed as the record does not demonstrate that there was an adjudication of the truth of the prior conviction allegation attached to that count. (§ 1025; see *People v. Cross* (2015) 61 Cal.4th 164, 174 (*Cross*); *People v. Monge* (1997) 16 Cal.4th 826, 845.) Defendant never admitted to the prior conviction allegation and the prior conviction allegation was not proven to the jury or the trial court. Nor may we uphold the sentence based on defense counsel's asserted stipulation. The stipulation of a prior conviction for the purpose of satisfying the prior felony conviction element of the offense of possession of a firearm by a felon "was an ordinary evidentiary stipulation," which did not require defendant's personal admission or stipulation or a waiver of rights by defendant regarding the use of the prior felony conviction. (*Cross, supra*, at p. 174.) "Here, by contrast," we are concerned with a stipulation of a prior section 273.5(a) conviction for the purpose of enhancing a sentence on a current section 273.5(a) conviction. (*Cross, supra*, at p. 174.) Because such a stipulation admits " 'every fact necessary to imposition of the additional punishment other than conviction of the underlying offense' ([*People v.*] *Adams* [(1993)] 6 Cal.4th 570,] 580), defendant was entitled to receive *Boykin-Tahl* [[10]] warnings before he made this admission." (*Cross, supra,* at p. 174.) "At a minimum, [defendant] was entitled to be advised of his right to a

---

[10] "When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary. (See *Boykin v. Alabama* (1969) 395 U.S. 238, 243-244 [23 L.Ed.2d 274, 89 S.Ct. 1709] (*Boykin*).) As a prophylactic measure, the court must inform the defendant of three constitutional rights—the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers—and solicit a personal waiver of each. (*People v. Howard* (1992) 1 Cal.4th 1132, 1179 [5 Cal.Rptr.2d 268, 824 P.2d 1315] (*Howard* ); see *Boykin*, at pp. 243-244; *In re Tahl* (1969) 1 Cal.3d 122, 130-133 [81 Cal.Rptr. 577, 460 P.2d 449] . . . .) Proper advisement and waiver of these rights, conducted with 'the utmost solicitude of which courts are capable,' are necessary 'to make sure [the accused] has a full understanding of what the plea connotes and its consequence.' (*Boykin*, at pp. 243-244.)" (*Cross, supra*, 61 Cal.4th at p. 170.)

fair determination of the truth of the prior conviction allegation. Without such advisement, [defendant] 'waived, without proper protections, important rights by [his] admission' of the prior conviction. ([*In re*] *Yurko* [(1974)] 10 Cal.3d [857,] 862.)" (*Cross, supra*, at p. 179.) At no time during the trial or at sentencing did the trial court "ask any questions of [defendant] personally or in any way inform him of his right to a fair determination of the prior conviction allegation." (*Id*. at p. 180.) And, "nothing in the record affirmatively shows that [defendant] was aware of his right to a fair determination of the truth of the prior conviction allegation." (*Ibid*.) Therefore, we shall vacate the sentence imposed on the conviction for infliction of corporal injury in violation of section 273.5(a) (count five), and remand the matter to the trial court for a new adjudication of the prior conviction allegation attached to count five, either by admission or trial, and for resentencing. (See *People v. Barragan* (2004) 32 Cal.4th 236, 239.)

## DISPOSITION

The sentence imposed on the conviction for infliction of corporal injury in violation of Penal Code section 273.5, subdivision (a) (count five) is vacated. The matter is remanded for a new adjudication of the prior conviction allegation attached to count five, either by admission or trial, and for resentencing. In all other respects, the judgment is affirmed.

_____

Jenkins, J.

We concur:

_____

Pollak, Acting P. J.

_____

Siggins, J.

*People v. Isiaih Thomas Trail*, A136726

17