Filed 12/2/15  P. v. Blunt CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>SEDDIE BLUNT,<br><br>Defendant and Appellant. | A142432<br><br>(Contra Costa County<br>Super. Ct. No. 51400191) |

On January 13, 2014, the Contra Costa District Attorney filed an information charging Seddie Blunt (Blunt or appellant) with felony possession of a firearm by a violent offender (Pen. Code, § 29900, subd. (a)(1)) (Count 1),  felony possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)) (Count 2), and felony possession of ammunition by a prohibited person (Pen. Code, § 30305, subd. (a)) (Count 3), all based on his involvement in a December 2013 shooting incident outside of his home.[1]  The information additionally alleged that Blunt had a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12) and a prison prior (§ 667.5, subd. (b)).  On May 16, 2014, a jury found Blunt guilty of all three substantive charges.

At sentencing on June 20, 2014, the trial court found the enhancement allegations true; denied Blunt's motion to strike the prior strike conviction; stayed the sentence for Count 2 under section 654; sentenced Blunt to two concurrent terms of two years and eight months in prison for Count 1 and Count 3; and added an additional year for the

---

[1] All statutory references are to the Penal Code unless otherwise specified.

1

prison prior, for a total sentence of three years and eight months. Blunt argues on appeal that the trial court committed error under *In re Yurko* (1974) 10 Cal.3d 857 (*Yurko*), requiring reversal of the finding as to his prior strike. He also maintains that sentencing him for both possession of a firearm by a violent offender (Count 1) and possession of ammunition by a prohibited person (Count 3) was erroneous under section 654. We agree that Blunt's concurrent sentence for Count 3 must be stayed pursuant to section 654, but otherwise affirm the judgment.

## I.  FACTUAL BACKGROUND

On December 12, 2013, at approximately 10:20 a.m., Richmond Police Officer Canelo responded to a Shot Spotter alert near Blunt's residence.[2] When Officer Canelo arrived on the scene, Officer Vegas was already present and speaking to a witness, Ms. Woods. According to Woods, a man had fired a shot from the driveway of Blunt's residence. Based on this information, the two officers walked to the nearby residence and observed Blunt standing near the open trunk of a silver Ford Taurus. Officer Vegas asked Blunt not to close the trunk, but Blunt closed it anyway.

Officer Canelo then asked Blunt to walk towards the officers, which he did. Officer Canelo told Blunt he was being detained and searched him for weapons. Officer Vegas asked Blunt why he had closed the trunk and if there was something in it. Blunt replied: "Yeah, my gun is in the trunk." Blunt further admitted that the Ford was his car, and the officers retrieved the car keys from Blunt's pants pocket. When the officers opened the trunk, they recovered a 410-gauge single-barrel shotgun with a loaded shell and six loose shotgun shells. The shotgun appeared to be engraved with Blunt's initials—SLB.

After the officers arrested Blunt and he waived his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436, Blunt explained that he had argued with Woods because he wanted to leave in his car and Woods was blocking his driveway with a cart. When Blunt asked Woods to move, she was reportedly belligerent and called him names. Claiming he

---

[2] The City of Richmond uses the Shot Spotter system to triangulate areas where loud noises occur or shots are fired.

2

felt threatened, Blunt returned to his apartment, where he viewed Woods flagging people down and pointing at his apartment and car. At some point, according to Blunt, Woods produced a knife. Again feeling threatened, Blunt retrieved his shotgun and fired one shot into the air from his window. He claimed he was hoping to scare Woods and discourage her from returning.

Blunt next unloaded the expended shell from his shotgun and placed another live round in it. When he saw Woods return, he left his apartment, walked to his car with the shotgun, and placed the shotgun in the trunk. The officers arrived while the trunk was still open. According to Blunt, he knew what he did was wrong, but he felt threatened by Woods and believed that firing the gun was the only way to resolve the situation. As a result of this incident, Blunt was charged as described above, and a jury trial was scheduled.

Commission of a prior qualifying crime was an element of each of the three substantive offenses with which Blunt was charged in this case: possession of a firearm by a violent offender; possession of a firearm by a felon; and possession of ammunition by a prohibited person. Prior to commencement of the jury trial, defense counsel agreed to stipulate to the existence of a prior conviction as an element of the various offenses, stating: "So I am thinking about the 1994 felony 211, Mr. Blunt and I would be willing to stipulate to that." At the close of the People's case, the trial court announced (and both parties confirmed) the stipulation to the jury as follows: "The two parties, the People and the defendant, have stipulated that prior to the time that the People allege a gun was found in the defendant's possession, he had been convicted of the felony of robbery; and they have stipulated that under the Penal Code, that felony is designated as a violent felony." According to the record, the parties did not discuss the separate prior strike allegation during the trial, no advisements were given to Blunt pursuant to *Boykin v. Alabama* (1969) 395 U.S. 238 (*Boykin*) and *In re Tahl* (1969) 1 Cal.3d 122 (*Tahl*), and Blunt did not expressly waive any of his trial rights with respect to the prior strike.

After the jury returned guilty verdicts for all three offenses, sentencing occurred before the trial court on June 20, 2014. Indicating that "we're on for trial on the priors,"

3

the trial court went on to state: "Because we have a stipulation to the robbery, it appears to me the only matter that the People need to prove that's relevant to the sentencing in any significant fashion is [the domestic violence conviction supporting the prison prior]." Nevertheless, the People thereafter submitted a certified copy of Blunt's RAP sheet and prison packets from the Department of Corrections with respect to both the robbery and the domestic violence convictions, and these documents were received into evidence without objection for, as the court characterized it, "support of the determination of prior convictions." After both parties declined to argue, the court found as follows: "The Court finds that the defendant was convicted in 1994 in the Alameda County Superior Court of a robbery, Penal Code Section 211, served a state prison term for that. That he was convicted, again in 2012, for a . . . 245(a), domestic violence crime and received a two-year state prison sentence for that crime. [¶] The Court finds also that the various crimes enumerated in the probation report by the probation officer are established by the evidence as the record of the defendant. That will be the Court's finding on the priors."

Thereafter, as stated above, the court imposed a total sentence of three years and eight months on Blunt, including one year for the prison prior and concurrent sentences of two years and eight months with respect to Count 1 and Count 3. The sentences for Count 1 and Count 3 were doubled due to Blunt's prior strike conviction. Blunt's timely notice of appeal brought the matter before this court.

## II. DISCUSSION

### A. *Yurko Error*

"When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary." (*People v. Cross* (2015) 61 Cal.4th 164, 170 (*Cross*).) As a part of this obligation, "the court must inform the defendant of three constitutional rights—the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers—and solicit a personal waiver of each." (*Ibid.*; see *Boykin*, *supra*, 395 U.S. at pp. 243-244; *Tahl*, *supra*, 1 Cal.3d at pp. 130-133.) The California Supreme Court in *Yurko*, *supra*, 10 Cal.3d 857, concluded that these *Boykin-Tahl* "requirements of advisement and waiver apply when a defendant

4

admits the truth of a prior conviction allegation that subjects him to increased punishment." (*Cross*, *supra*, 61 Cal.4th at p. 170 [discussing *Yurko*].)  Specifically, the *Yurko* Court held that " '*Boykin* and *Tahl* require, before a court accepts an accused's admission that he has suffered prior felony convictions, express and specific admonitions as to the constitutional rights waived by an admission.  The accused must be told that an admission of the truth of an allegation of prior convictions waives, as to the finding that he has indeed suffered such convictions, the same constitutional rights waived as to a finding of guilt in case of a guilty plea.' " (*Cross*, *supra*, 61 Cal.4th at p. 170, quoting *Yurko*, *supra*, 10 Cal.3d at p. 863.)

In fact, the *Yurko* Court, in dealing with admissions related to previous convictions, actually went beyond the *Boykin-Tahl* requirements.  Under such circumstances, the Court concluded, "a defendant must also be advised of 'the full penal effect of a finding of the truth of an allegation of prior convictions.' " (*Cross*, *supra*, 61 Cal.4th at p. 170, quoting *Yurko*, *supra*, 10 Cal.3d at p. 865.)  Specifically, *Yurko* holds " 'as a judicially declared rule of criminal procedure' that an accused, before admitting a prior conviction allegation, must be advised of the precise increase in the prison term that might be imposed, the effect on parole eligibility, and the possibility of being adjudged a habitual criminal." (*Cross*, *supra*, 61 Cal.4th at pp. 170-171, quoting *Yurko*, *supra*, 10 Cal.3d at p. 864.)

The California Supreme Court has subsequently clarified that *Boykin*, *Tahl*, and *Yurko* "do not apply to a stipulation of 'evidentiary facts, even facts crucial to a conviction,' if the stipulation does not encompass 'all of the evidentiary facts necessary to imposition of the additional penalty.' " (*Cross*, *supra*, 61 Cal.4th at p. 171.)  Thus, for example, in *People v. Newman* (1999) 21 Cal.4th 413 (*Newman*), our high court held that *Boykin* and *Tahl* did not apply to the defendant's stipulation to his status as a felon during trial because "no penal consequences flowed directly from the stipulation, and the prosecutor still was required to prove the remaining elements of the [felon in possession of a firearm] offense." (*Newman*, *supra*, 21 Cal.4th at pp. 421-422, disapproved on another ground in *Cross, supra*, 61 Cal.4th at pp. 178-179.)  Similarly, in this case, when

5

Blunt stipulated to his prior robbery conviction during the jury trial on the substantive charges, *Boykin* and *Tahl* were not implicated because no penal consequences flowed directly from the stipulation. Rather, the stipulation merely relieved the People of proving one element of each of the charged offenses. (Cf. *Newman*, *supra*, 21 Cal.4th at p. 422.) Thus, it was not error to fail to advise Blunt of his *Boykin-Tahl* rights at that stage in the proceedings.

However, when the trial court, at the June 2014 sentencing hearing, adopted Blunt's previous stipulation for purposes of proving his prior strike conviction without giving the necessary advisements, it appears that *Yurko* error occurred. Indeed, the trial court expressly stated that there was "a stipulation to the robbery" and went on to explain that, for sentencing purposes, the People need only prove Blunt's other prior conviction for domestic violence. Obviously, as the trial court recognized, Blunt's stipulation admitted the truth of every fact necessary for imposition of additional punishment based on the prior strike conviction. It was tantamount to a plea of guilty insofar as the enhancement allegation was concerned. Thus, *Yurko* advisements were warranted. (Cf. *People v. Adams* (1993) 6 Cal.4th 570, 580-583.) Indeed, the People concede as much.

The question before us, then, becomes whether, under the particular circumstances of this case, the *Yurko* error identified by Blunt requires reversal of the trial court's prior strike finding. Our high court has concluded that *Yurko* errors are not reversible per se. Rather, "the test for reversal is whether 'the record affirmatively shows that [the guilty plea] is voluntary and intelligent under the totality of the circumstances.' " (*Cross*, *supra*, 61 Cal.4th at p. 171, quoting *People v. Howard* (1992) 1 Cal.4th 1132, 1175.) The Supreme Court has also employed a harmless error analysis when determining the consequences of *Yurko* error. Specifically, in *People v. Guzman* (1988) 45 Cal.3d 915 (*Guzman*), overruled on other grounds in *Price v. Superior Court* (2001) 25 Cal.4th 1046, 1069, fn. 13, the defendant admitted that he had suffered two prior rape convictions. Although he was largely advised of his trial rights with respect to the admission, the trial court told the defendant that he had the right to "a hearing" on the prior convictions rather than the right to a jury trial. (*Guzman*, *supra*, 45 Cal.3d at p. 968.) Under these facts, the

6

*Guzman* court concluded: "On this record there is no reasonable probability that, if the term 'jury trial' instead of 'hearing' had been used, defendant (i) would have denied the priors and (ii) they would not have been found true. There is no dispute that defendant had suffered the priors and served prison terms therefor. We therefore conclude the error was harmless." (*Ibid.*)

In the present case, however, we need not avail ourselves of either of these analytical constructs in concluding that reversal of the trial court's finding with respect to Blunt's prior strike conviction is unnecessary. This is true because—although the trial court informed the People that no further proof of the prior strike was required given Blunt's stipulation to the 1994 robbery—the People chose to reject the stipulation and prove the strike anyway. Specifically, the People introduced into evidence without objection both the prison packet from the Department of Corrections with respect to the 1994 robbery and Blunt's RAP sheet which confirmed the robbery conviction. The court found the evidence admissible "in support of the determination of prior convictions" and, after both sides declined to argue the matter, found that "the defendant was convicted in 1994 in the Alameda County Superior Court of a robbery, Penal Code Section 211, [and] served a state prison term for that." The prior conviction records admitted into evidence in this case, including the records with respect to the 1994 robbery, "were official government documents clearly describing the alleged convictions. As such, the fact of the convictions was presumptively established." ( See *People v. Epps* (2001) 25 Cal.4th 19, 29-30, citing Evid. Code, § 664.) Since the People chose not to rely on Blunt's prior stipulation when proving the prior strike conviction and instead admitted uncontested evidence which overwhelmingly established the existence of that conviction, the stipulation became irrelevant for purposes of sentencing and therefore *Yurko* advisements were simply not required.

### B. *Multiple Punishments Under Section 654*

Blunt also contends that he was improperly sentenced for both Count 1 (possession of a firearm by a violent offender) and Count 3 (possession of ammunition by a prohibited person) in violation of section 654, which prohibits multiple punishments for

the same offense. Section 654 provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Section 654 prohibits multiple punishment for the same offense even when, as here, the trial court imposes concurrent sentences. (*People v. Jones* (2012) 54 Cal.4th 350, 353 (*Jones*).) Moreover, although Blunt did not raise this issue in the trial court, " '[e]rrors in the applicability of section 654 are corrected on appeal regardless of whether the point was raised by objection in the trial court or assigned as error on appeal.' " (*People v. Hester* (2000) 22 Cal.4th 290, 295.)

Recently, the Supreme Court in *Jones* confirmed that the " 'simultaneous possession of different items of contraband' "—like the firearm and the ammunition in this case—constitute separate acts for purposes of section 654. (*Jones*, *supra*, 54 Cal.4th at p. 358.) However, " '[s]ection 654 applies not only where there was but one act in the ordinary sense, but also where there was a course of conduct which violated more than one statute but nevertheless constituted an indivisible transaction. [Citation.] Whether a course of conduct is indivisible depends upon the intent and objective of the actor. [Citation.] If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one." (*People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1414 (*Dowdell*).) Thus, section 654 would be implicated in this case if Blunt possessed both the firearm and the ammunition as part of an indivisible course of conduct based on a single objective.

" 'Whether the facts and circumstances reveal a single intent and objective within the meaning of Penal Code section 654 is generally a factual matter.' " (*Dowdell*, *supra*, 227 Cal.App.4th at p. 1414.) We therefore apply on appeal "the substantial evidence standard of review to the trial court's implied finding that a defendant harbored a separate intent and objective for each offense." (*Ibid.*) In contrast, " 'the dimension and meaning of section 654 is a legal question,' " and thus subject to our de novo consideration.

8

(*Dowdell, supra*, 227 Cal.App.4th at p. 1414; see *People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.)

Under similar, although not identical, circumstances, the Second District in *People v. Lopez* (2004) 119 Cal.App.4th 132 (*Lopez*) concluded that section 654 barred punishment for both unlawful possession of a firearm and unlawful possession of ammunition. (*Id.* at p. 138.) In that case, all of the ammunition at issue was loaded into the prohibited weapon. (*Ibid.*) Noting that the defendant's "obvious intent was to possess a loaded firearm," the *Lopez* court opined: "While there may be instances when multiple punishment is lawful for possession of a firearm and ammunition, the instant case is not one of them. Where, as here, all of the ammunition is loaded into the firearm, an 'indivisible course of conduct' is present and section 654 precludes multiple punishment." (*Ibid.*) In reaching this conclusion, the *Lopez* court emphasized that, when undertaking an analysis of the applicability of section 654, "the appellate courts should not 'parse[] the objectives too finely.' " (*Ibid.*, quoting *People v. Britt* (2004) 32 Cal.4th 944, 953.)

Here, Blunt argues that the reasoning in *Lopez* bars punishment for both possession offenses because there are no facts in the record indicating that he possessed the shotgun shells found in the trunk next to the firearm at issue with a "separate intent and objective." Rather, he claims, he possessed both the shotgun and the extra shells as part of the same course of conduct and with the sole intent to possess a loaded shotgun to ward off a threatening trespasser. The People, in contrast, argue that *Lopez* is distinguishable because the ammunition in this case was not loaded into the gun, the record is silent as to when the shells were placed in the trunk, and Blunt could have intended to give the shells away or use them to reload an empty shotgun for a separate criminal purpose.

We find Blunt's position to be the more persuasive. The six shotgun shells at issue were found loose in the trunk next to the single-shot shotgun. Of course, because the shotgun only permitted a single round to be loaded at any given time, the shells could not all be physically contained within the gun. However, they were all of the type which

9

could be used to reload the gun, they were unexpended, and, as previously stated, they were found in close proximity to the shotgun. Thus, this is not a case where different types of ammunition were found; where the ammunition was kept separately from the firearm; or where large amounts of stockpiled ammunition were recovered, all facts which might tend to support a finding of a separate criminal objective. Rather, the most reasonable inference from the evidence presented is that Blunt possessed both the shotgun and the extra shells with the single intent to possess a loaded shotgun (reloading as necessary) to respond to the perceived threat presented by Woods. In contrast, there is no substantial evidence supporting the People's version of events. Under such circumstances, section 654 bars punishment for both possession offenses.

### III. DISPOSITION

The 32-month concurrent sentence for Count 3, unlawful possession of ammunition, is stayed pursuant to section 654. The superior court is ordered to prepare an amended abstract of judgment to reflect this modification and send it to the Department of Corrections and Rehabilitation. As so modified, the judgment is affirmed.

_____
REARDON, J.


We concur:


_____
RUVOLO, P. J.


_____
STREETER, J.