Filed 12/3/15  P. v. Sims CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C077580 |
| Plaintiff and Respondent, | (Super. Ct. No. 14F01301) |
| v. | |
| RICKY SIMS, | |
| Defendant and Appellant. | |

A jury convicted defendant Ricky Sims of corporal injury upon a spouse or cohabitant (Pen. Code, § 273.5, subd. (a); count one)[1] and two counts of violating a protective or stay away order, one a felony and the other a misdemeanor (§ 166, subds. (c)(1) & (4); counts two & three).  In bifurcated proceedings, the court sustained allegations of a prior domestic violence conviction (§ 273.5, former subd. (e)(1) [now subd. (f)(1) (Stats. 2014, ch. 71, § 117)]) and two prior prison terms (§ 667.5, subd. (b)).

---

[1] Further undesignated statutory references are to the Penal Code.

1

Sentenced to state prison, defendant appeals. He contends his stipulation to his prior 2010 domestic violence conviction was uninformed and involuntary. He also claims he did not voluntarily waive his right to a jury trial on the prior domestic violence conviction. We will affirm the judgment.

FACTUAL AND PROCEDURAL HISTORY

A second amended information added two one-year prior prison term enhancements. (§ 667.5, subd. (b).) One of the added prior prison term enhancements was for the prison term served for a 2010 felony conviction for a violation of section 273.5. The same 2010 prior felony conviction was alleged for enhanced punishment purposes (§ 273.5, former subd. (e)(1)) in connection with count one which charged a violation of section 273.5, subdivision (a). After arraigning defendant on the second amended information, the court proceeded to discuss the People's motion in limine.

The People sought to impeach defendant with his two prior felony convictions, one of which was for the same 2010 prior conviction, the other prior felony conviction for another domestic violence offense in 2007. The People also sought to introduce these two felony convictions (2010 & 2007) as well as two misdemeanor convictions (2004 & 2005), all for domestic violence, to show propensity under Evidence Code section 1109. The People noted it had the "reports" for those offenses. In their written in limine motion, the People requested to admit a certified copy of defendant's section 969b packet that reflected the 2007 and 2010 convictions.

In ruling that the People could impeach defendant with the felony convictions, the court noted its "understanding that the defendant does intend to testify." With respect to the propensity evidence, the court determined that the People would be permitted to introduce the conduct evidence of the misdemeanors and felonies. The court noted that the People could also prove the conduct by prior conviction documentation under Evidence Code section 452.5, subdivision (b).

2

Defense counsel sought to "bifurcate the prior conviction other than what was discussed within the element of the counts themselves." The People had no objection and the court granted defense counsel's request.

In his opening statement, defense counsel told the jury that defendant would be testifying and would not deny his prior history of domestic violence against the victim. Defense counsel stated, "You're going to hear that in the past he's done this. He stands and takes the time, takes the conviction." Defense counsel further stated, "But today with the history he has, aware of what it looks like to you, when it doesn't happen that way [he] simply can't take the conviction."

During the victim's testimony, she recounted the facts underlying the previous incidents of domestic violence by defendant against her and confirming that defendant had been convicted and sent to prison. The victim, Jacqueline Q., had been in a relationship with defendant for 12 years and he was the father of her two children. Defendant had previously acted violently towards her but she did not always call the police. In September 2004, defendant hit her numerous times and somebody called the police. In April 2005, defendant punched her a couple of times and someone called the police. In April 2007, when she tried to leave their apartment, he dragged her back by her hair and punched her in the stomach and nose. Her mother took her to the hospital where the police were summoned. Defendant went to prison for the incident. In December 2009, defendant hit her in the head a few times, and later choked and punched her. She reported the incidents. Defendant was convicted and sentenced to prison. He was ordered not to have any contact with her but upon his release defendant violated the order and was convicted. The victim sought modification of the order to allow for peaceful contact.

On February 23, 2014, the victim, defendant, and their daughter lived together in a home. The victim was five months pregnant. An argument started when the victim saw a text message from another woman on defendant's cell phone. Defendant called the

3

victim derogatory names and punched her a couple of times on her legs and arms and pushed her to the ground. She locked herself in the bedroom for the night. He was unable to get into the bedroom. The next morning, the victim emerged from the bedroom to find defendant angry and tearing up the house looking for his cigarettes. Later that day, they argued and defendant punched her in the stomach a couple of times, choked her, stuffed a towel into her mouth to stop her screams, and dragged her to the bedroom. He was afraid someone might call the police so he fled the house. The victim went into the bathroom and discovered that she was discharging a lot of blood. The victim called 911. The police arrived and found the victim in pain and hysterical. The victim was taken to the hospital. The victim had bruises on her arms, hands, legs, and chest.

Between February 28, 2014, and March 15, 2014, defendant, who was in jail, called the victim 49 times. The victim had not spoken to defendant since the incident.

Prior to the defense case, the prosecutor and defense counsel entered into a series of stipulations. The parties stipulated to the following: Defendant was convicted of misdemeanor domestic violence against the victim on October 18, 2004, and April 20, 2005; defendant was convicted of felony domestic violence against the victim on October 25, 2007, and June 17, 2010; defendant was convicted of misdemeanor violation of a protective order of the victim on June 28, 2013; as a condition of probation after conviction for domestic violence, a protective order was issued pursuant to section 1203.097 on June 28, 2013, valid until 2016, prohibiting defendant from harassing, striking, threatening, assaulting, following, stalking, molesting, destroying or damaging personal or real property, disturbing the peace, keeping under surveillance, or blocking the movements of the victim and defendant knew of the order; and on February 25, 2014, the court issued an order pursuant to section 136.2 for pending criminal proceedings involving domestic violence prohibiting defendant from having any personal, electronic, telephonic, or written contact with the victim and defendant knew of the order. Without

4

advising defendant of any rights or penal consequences of the stipulations, the trial court accepted the stipulations and read them to the jury.

During defendant's testimony on direct, he admitted he had assaulted the victim in the past and had been jailed or imprisoned five or six times for it. He claimed his prior conduct against the victim was a result of his cheating and drinking. He explained that when he was released from custody they reunited. He obtained employment in May 2013 and they resumed living together in August 2013.

On February 23, 2014, defendant and the victim were watching a movie when he received a text message from another woman, which he tried to hide but the victim saw it and became angry. He assured the victim it was nothing but a mass text. They went to sleep together that night. The next morning, the victim brought up the text message and wanted defendant to tell the woman not to call anymore. Defendant refused and the victim became angry. The victim kicked and poked him for 15 to 20 minutes while they sat on the sofa. He headed to the garage but the victim followed and tried to keep the door open with her arms and leg. He went back into the house, sat on the sofa, and she kept poking him. He went to the bathroom and she tried to force her way in. When he tried to leave the house through the front door, she blocked the door and tried to keep it closed using her feet. He claimed she bruised herself. When the victim went into the bathroom, she discovered that she was bleeding. He left the house. On cross-examination, defendant reiterated that he was taking full responsibility for all of his prior violence against the victim.

A year and a half prior to the trial, a neighbor heard defendant and the victim arguing and saw the victim strike defendant. Defendant walked away. The victim followed defendant in a car. She drove the car up on the sidewalk and clipped defendant on his leg, causing him to fall. The victim then drove away.

5

After the defense case, defendant waived his "right to a jury trial on the prior *convictions* that have been alleged." (Italics added.) The jury thereafter reached its verdicts, convicting defendant on all counts.

At the court trial on the priors, the court noted that People's exhibit 20, the section 969b prison packet, "show[s] each of the convictions that have been alleged, [defendant]. This is a conviction that's alleged pursuant to 273.5 [former subdivision (e)(1)]. [¶] And then there are the two convictions [(prison terms)] that are alleged by the People pursuant to Penal Code section 667.5 [subdivision] (b). [¶] And the[ir] 969(b) package does support those prior convictions allegations." The court found that the priors had been proven beyond a reasonable doubt.

DISCUSSION

I

The 2010 prior, which was alleged in connection with count one, made defendant eligible for enhanced punishment under former subdivision (e)(1) of section 273.5, increasing the triad from two, three, or four years to two, four, or five years. Defendant contends his stipulation to the 2010 prior was uninformed and involuntary because the trial court failed to advise him of his constitutional rights and the potential penal consequences pursuant to *In re Yurko* (1974) 10 Cal.3d 857 (*Yurko*) and *People v. Cross* (2015) 61 Cal.4th 164 (*Cross*) (which was decided after defendant's trial).

Although conceding that the trial court did not advise defendant of his rights prior to his stipulation that he suffered a 2010 prior felony conviction for spousal abuse, the People respond that defendant's stipulation was knowing and voluntary based on the totality of the circumstances test. We will conclude that the error is harmless under any standard based on the circumstances of this case.

*Boykin v. Alabama* (1969) 395 U.S. 238, 242-244 [23 L.Ed.2d 274] (*Boykin*) and *In re Tahl* (1969) 1 Cal.3d 122, 130-133 (*Tahl*), set forth the rule that in order to ensure that a defendant's "guilty plea" is knowing and voluntary, the trial court is required to

inform the defendant of three constitutional rights (right to a jury trial, right to cross-examine witnesses, & right to remain silent) and obtain a waiver of each. *Yurko* extended this procedure to the defendant's admission of a prior conviction allegation which increases punishment. (*Yurko*, *supra*, 10 Cal.3d at p. 863.)

In *Cross*, the defendant was charged with a felony violation of section 273.5, subdivision (a). It was further alleged that the defendant had a prior section 273.5 conviction for purposes of enhanced punishment. At trial, the defendant stipulated to the prior without having been advised of or waiving his *Boykin-Tahl* rights. The jury convicted the defendant and *found the prior to be true*. The defendant was sentenced to the upper term of five years. (*Cross*, *supra*, 61 Cal.4th at pp. 168-169.) *Cross* held that *Yurko* applies when a defendant admits by stipulation all necessary facts for imposing an enhanced punishment under section 273.5, former subdivision (e)(1). (*Cross*, at pp. 168, 174, 179.) "*Yurko* error is not reversible per se." (*Cross*, at p. 171.) "[T]he test for reversal is whether 'the record affirmatively shows that [the guilty plea] is voluntary and intelligent under the totality of the circumstances.' " (*Ibid.*) *Cross* reversed, finding there was nothing in the record which showed the defendant was aware of his right to a fair determination of the prior. (*Id.* at p. 180.)

Here, prior to trial, the prosecutor was ready to introduce the certified documents reflecting defendant's 2010 conviction. Defendant planned to testify and his strategy was to admit all his prior criminal history in an attempt to persuade the jury that this time was different, that the victim bruised herself, and that she assaulted and battered him. Defendant did so testify. Defendant was obviously no stranger to the system. The 2010 felony conviction which enhanced the punishment for count one was bifurcated pursuant to defense counsel's request.

Defense counsel's bifurcation request is arguably ambiguous when considered alone—he sought to "bifurcate the prior conviction other than what was discussed within the element of the counts themselves." In connection with count one, it was further

7

alleged that defendant had a 2010 prior felony conviction for domestic violence which, if found true, increased the triad from two, three, or four years to two, four, or five years. It was further alleged that defendant had two prior prison terms within the meaning of section 667.5, subdivision (b). Count two charged defendant with a violation of section 166, subdivision (c)(4) which required the prosecution to prove as an "element" that the court issued a protective order as a condition of probation after a conviction for domestic violence. In the context of the record as a whole, we conclude that defense counsel sought to bifurcate the prior conviction in connection with count one and the prior prison term allegations because these were not "elements," unlike the element of a prior conviction for domestic violence for count two.

Prior to defense counsel's stipulation to the fact of the conviction, the trial court ruled defendant's 2010 prior felony conviction came in as propensity evidence as did his 2007 prior felony conviction and the 2005 and 2004 convictions, both misdemeanors. The victim testified that defendant was prosecuted for the domestic violence and he was convicted and sentenced to prison. The prosecutor and defense counsel stipulated that defendant sustained various convictions including the 2010, 2007, 2005, and 2004 convictions. These convictions came in for propensity purposes and the 2007 and 2010 prior felony convictions came in as impeachment evidence as the trial court also ruled in limine. Defendant admitted he had been convicted and sentenced to jail and prison five or six times for his domestic violence against the victim. The stipulation to the 2007 and 2010 prior felony convictions, albeit before defendant's testimony, made it unnecessary for the prosecutor to submit its section 969b package to prove the prior felonies to impeach defendant.

After the defense case, defendant expressly waived his right to a jury trial on the prior "*convictions*" that were alleged in the charging document. Defendant argues he only waived his jury trial right with respect to the two prior prison term allegations. We disagree with defendant's interpretation of the record.

8

In the context of the record as a whole, not just the transcript of the waiver itself which is arguably somewhat ambiguous, the record reflects that defendant was waiving his jury trial right on the prior "convictions" alleged in the charging document, which included the two prior prison terms served for the 2007 and 2010 convictions and the prior 2010 conviction for purposes of enhanced punishment for violation of section 273.5. Defense counsel confirmed that he had advised defendant of the consequences of his jury trial waiver on the prior convictions and further confirmed that he had advised defendant of the "one-year priors" without referring to the prior prison term allegations which each carried a one-year term or to the prior conviction under section 273.5, former subdivision (e)(1) which increased the upper term of the triad for the underlying offense by one year, from four years to five years. We conclude defendant thus understood that he had a right to a jury trial on the 2010 prior conviction allegation for purposes of the enhanced punishment under section 273.5, former subdivision (e)(1).

Further, jury waiver on the allegation is supported by the fact that unlike the jury in *Cross,* the jury here was not asked to find, based on the stipulation, that the prior 2010 conviction was true for purposes of enhanced punishment under section 273.5, former subdivision (e)(1). The jury was not instructed on it and did not make a finding on it. Instead, the prior had been bifurcated for trial, defendant waived his jury trial right, and defendant had a court trial on the prior conviction for purposes of section 273.5, former subdivision (e)(1). In *Cross*, the defendant's "unwarned stipulation to the truth of the prior conviction allegation did not merely waive a jury trial; it waived any trial at all." (*Cross*, *supra*, 61 Cal.4th at p. 173.) Here, after a court trial at which the court considered the section 969b package, the court found the prior to be true for both purposes. In imposing the enhanced punishment for section 273.5, the trial court relied on its finding, not defendant's stipulation. Defendant never expressly admitted the prior for purposes of enhanced punishment and his stipulation was not relied upon by the jury which distinguishes this case from *Cross.* The allegation was not "retried" as defendant

9

claims — it had been bifurcated for the court to receive evidence and make its finding. We conclude that the error, if any, in accepting defense counsel's stipulation without the trial court warning defendant of his *Boykin-Tahl* rights and obtaining his waivers, was harmless beyond a reasonable doubt under the totality of the circumstances of this case.

## II

Defendant claims that he was denied his constitutional right to a jury trial on the 2010 prior conviction for purposes of section 273.5, former subdivision (e)(1). He acknowledges that the law is contrary to his claim but raises the issue to preserve it for further review. We reject defendant's claim. "[T]he right to a jury trial on a prior conviction allegation 'is derived from statute' and not from the state or federal Constitution." (*Cross*, *supra*, 61 Cal.4th at p. 179.) Moreover, as we have previously concluded, the record reflects defendant expressly waived his right to a jury trial on the 2010 prior conviction which was alleged as a prior conviction.

## DISPOSITION

The judgment is affirmed.


                                        /s/
                                        Blease, Acting P. J.


We concur:



        /s/
        Robie, J.



        /s/
        Butz, J.


10