Filed 10/3/16  P. v. Vega CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAVIER ANTONIO VEGA,<br><br>    Defendant and Appellant. | B262459<br><br>(Los Angeles County<br>Super. Ct. Nos. KA104850, KA103265) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge.  Affirmed in part and remanded with directions for resentencing.

Law Offices of Michael R. Kilts, Michael R. Kilts and Joseph P. Farnan for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell and Peggy Z. Huang, Deputy Attorneys General, for Plaintiff and Respondent.

# INTRODUCTION

Javier Antonio Vega appeals from a judgment after a jury convicted him of one count of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)).[1]  During the trial, Vega stipulated that he previously had been convicted of a felony.  Immediately after the trial, Vega stipulated that he had a prior serious felony conviction within the meaning of the three strikes law.  Before Vega's stipulation to the serious felony conviction allegation, the court advised Vega that he had a right to a court or jury trial on the issue of the prior serious felony conviction, which Vega stated he understood and waived.

Vega argues that the trial court erred by failing to advise him of his constitutional rights under *Boykin v. Alabama* (1969) 395 U.S. 238 (*Boykin*) and *In re Tahl* (1969) 1 Cal.3d 122 (*Tahl*), known as *Boykin-Tahl* advisements, before he stipulated to an element of the charge against him for possession of a firearm as a felon and before he stipulated to the prior serious felony conviction.  Because California law does not require the court to give *Boykin-Tahl* advisements prior to Vega's first stipulation, and because Vega's second stipulation was voluntary and intelligent despite the incomplete *Boykin-Tahl* advisements, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *Vega's Conviction in Case No. KA103265 for Vandalism for the Benefit of a Criminal Street Gang*

Police arrested Vega in 2013 for tagging the gang monikers "Malo" and "Bad Boy" in different places in the city of West Covina, causing $6,650 in damage.  The People charged Vega with two counts of felony vandalism and one count of misdemeanor vandalism.  (§ 594.)  The People also alleged, in connection with two of the three counts,

---

[1]    Statutory references are to the Penal Code.

2

that Vega committed the crimes for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further, and assist in criminal conduct by the gang, within the meaning of section 186.22, subdivisions (b)(1)(A) and (d).

Vega decided to plead no contest. Prior to his plea, the court advised Vega of his constitutional rights to a preliminary hearing, a jury trial or court trial, confront and cross-examine witnesses, present a defense, remain silent, and a formal restitution hearing. Vega stated that he understood these rights. Vega also initialed and signed a "Felony Advisement of Rights, Waiver, and Plea Form." The court also advised Vega that a no contest plea "means the same as a guilty plea" and had the same consequences. The court further advised Vega that admitting the allegation he committed the crime for the benefit of a criminal street gang pursuant to section 186.22, subdivision (b)(1)(A), would be a strike, "and that means if you are convicted of another felony in the future, then pursuant to the three strikes law the penalty for that future felony will be increased as a result of your conviction in this case." The court also advised Vega of the maximum period of confinement for violating probation.

After receiving these advisements and submitting the executed form, Vega pleaded no contest to all three counts of vandalism and admitted the allegation that he committed the crimes for the benefit of a criminal street gang. The court found that Vega "expressly, knowingly, intelligently, and understandingly waived [his] constitutional rights, and that [his] pleas and admission were freely and voluntarily made with an understanding of the nature and consequences thereof . . . ." The court accepted the plea and sentenced Vega to three years probation, ordered him to serve three days in jail, suspended his driver's license for one year, and imposed various fines and fees.

B.      *Vega's Conviction in Case No. KA104850 for Possession of a
        Firearm by Felon*

In February 2014 Jose Najera and Angel Mancillas were standing next to Mancillas's car outside an apartment building in the city of Covina. Louis Beech and

3

Stephanie Villela were sitting in the backseat of the car. Jennifer Villela, who was Stephanie's sister, Vega's girlfriend, and Mancillas's ex-girlfriend, came out of the apartment building and got into Vega's car. They drove away.

Within a few minutes, Vega became angry with Mancillas, drove back to the apartment building, and fired a gun out of the car window. Najera and Mancillas hurried into Mancillas's car. Mancillas pursued Vega, collided with Vega's car, and then proceeded to the police station to report the crime.

The People charged Vega with four counts of attempted premeditated murder, one count of possession of a firearm by a felon, one count of discharging a firearm from a motor vehicle at another person, and one count of shooting at an occupied motor vehicle. (§§ 246, 664/187, subd. (a), 26100, subd. (c), 29800, subd. (a)(1).) Vega pleaded not guilty, and the case proceeded to a jury trial. The jury found Vega guilty of possession of a firearm by a felon, and acquitted him of all other charges. The court sentenced Vega to an aggregate prison term of six years.

The court also found that Vega had violated his probation in case No. KA103265, the vandalism case. The court revoked probation, and sentenced Vega to a consecutive prison term of four years for the probation violation. Vega timely appealed.

**DISCUSSION**

A. *The Court Did Not Need To Advise Vega of His Constitutional Rights Before Vega Stipulated to an Element of the Crime*

"When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary. [Citation.] As a prophylactic measure, the court must inform the defendant of three constitutional rights—the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers—and solicit a personal waiver of each." (*People v. Cross* (2015) 61 Cal.4th 164, 170, citing *Boykin*, *supra*, 395 U.S. at pp. 243-244; see *Tahl*, *supra*, 1 Cal.3d at p. 130 ["a plea of guilty cannot stand unless the record in some manner indicates a free and

4

intelligent waiver of the three enumerated rights necessarily abandoned by a guilty plea and an understanding of the nature and consequences of the plea"].) "'[E]ach of the three rights mentioned [in *Boykin*]—self-incrimination, confrontation, and jury trial—must be specifically and expressly enumerated for the benefit of and waived by the accused prior to acceptance of his guilty plea.'" (*People v. Allen* (1999) 21 Cal.4th 424, 435.)

Vega argues that his conviction of possession of a firearm by a felon should be reversed because he did not receive proper *Boykin-Tahl* advisements before stipulating that he previously had been convicted of a felony. Vega contends that *Boykin-Tahl* advisements were required because the stipulation was tantamount to a plea of guilty.

California cases have rejected Vega's contention. "[T]he *Boykin–Tahl* requirements did not apply to the defendant's stipulation to his status as a felon because 'no penal consequences flowed directly from the stipulation, and the prosecutor still was required to prove the remaining elements of the offense'" of possession of a firearm as a felon. (*People v. Cross*, *supra*, 61 Cal.4th at p. 171; see *People v. Cunningham* (2001) 25 Cal.4th 926, 986 ["the trial court did not err in not giving the *Boykin–Tahl* advisements prior to defendant's stipulation that he previously had been convicted of a felony"]; *People v. Newman* (1999) 21 Cal.4th 413, 422 ["defendant's factual stipulation to his status as a felon in the course of his trial on the charge of possession of a firearm by a felon was not subject to the *Boykin–Tahl* requirements"].)

Vega stipulated only to the fact that he was a felon. The prosecution still had to prove beyond a reasonable doubt that Vega possessed a firearm and knew that he possessed it.[2] As the Supreme Court stated in *People v. Newman*, *supra*, 21 Cal.4th 413, "contrary to defendant's contention that the stipulation 'was tantamount to a plea of

---

[2] Section 29800, subdivision (a)(1), provides in relevant part, "Any person who has been convicted of a felony under the laws of . . . the State of California . . . and who owns, purchases, receives, or has in possession or under custody or control any firearm is guilty of a felony." The court instructed the jury pursuant to CALCRIM No. 2511 as follows: "To prove that the defendant is guilty of this crime, the People must prove that, one, the defendant possessed a firearm; [two,] the defendant knew that he possessed the firearm; and three, the defendant had been previously convicted of a felony."

guilty because that admission provided the critical link that criminalized [defendant's] possession of a gun,' defendant's stipulation merely relieved the prosecution of proving one element of the charge. . . . [The] defendant elected 'to stipulate to one . . . , but not all, of the evidentiary facts necessary to a conviction of an offense.'" (*Id.* at p. 422.) Thus, the trial court did not err by failing to give Vega *Boykin-Tahl* advisements prior to Vega stipulating that he had a prior felony conviction.

B.      *Vega's Admission of His Prior Serious Felony Conviction Was Voluntary and Intelligent*

After the jury convicted Vega of possession of a firearm by a felon, and while the jurors were still in the jury room waiting for the court to excuse them, counsel for Vega stated that he was "pretty sure" Vega was going to admit the prior serious felony conviction allegation. The court stated, "We need to find out. If he's not going to admit, is he going to waive jury trial? Because we still have the jurors here." After counsel for Vega conferred with his client, the following exchange occurred:

"[Counsel for Vega]: He says he'll admit the strike.

"The Court: Would you [the prosecutor] take the admission?

"[The prosecutor]: Yes. Javier Antonio Vega, it is alleged that you suffered [a] prior conviction, which is considered a strike for purposes of [the three strikes law]. . . . Do you admit that prior and that it is a strike conviction?

"The Court: Before you admit, do you have to advise him of his rights?

"[The prosecutor:] I can do that. Sure. You have a right to have your priors heard by a jury and decided by that jury. Do you give up that right and agree to admit to that prior?

"[Vega]: Yes.

"The Court: You also have a right to have the court determine whether that strike prior is, in fact, true. It can be a jury or --

"[Vega]: Trying to prove that it did happen?

"The Court: Correct. You understand that?

6

"[Vega]: Yes.

"The Court: Okay. You [the prosecutor] may continue.

"[The prosecutor]: Thank you. To that prior strike conviction that I read to you, do you admit that or deny it?

"[Vega]: I admit.

"[The prosecutor]: Thank you.

"The Court: You waive your right to a trial, either by court or jury?

"[Vega]: Yes.

"The Court: Counsel join?

"[Counsel for Vega]: Join, your Honor.

"The Court: Court accepts the admission. Finds the waivers were knowingly, intelligently, and understandingly made. The admission was freely and voluntarily given with a clear understanding of the nature and consequences of that plea. And as a result of the admission, the court finds the strike prior to be true."

Unlike a stipulation to a factual element of a crime, a stipulation to a prior serious felony conviction requires *Boykin-Tahl* advisements because a true finding on the prior conviction allegation exposes the defendant to a greater punishment. (*People v. Cross*, *supra*, 61 Cal.4th at pp. 174, 178-179; *People v. Mosby* (2004) 33 Cal.4th 353, 356 (*Mosby*); see *In re Yurko* (1974) 10 Cal.3d 857, 863 ["*Boykin* and *Tahl* require, before a court accepts an accused's admission that he has suffered prior felony convictions, express and specific admonitions as to the constitutional rights waived by an admission"].) Here, although the court advised Vega of his right to a court or jury trial on his prior conviction, the court did not advise Vega of his rights against self-incrimination and to confront adverse witnesses.

Nevertheless, the failure to properly advise a defendant of his or her *Boykin-Tahl* "rights is not reversible 'if the record affirmatively shows that [the admission] is voluntary and intelligent under the totality of the circumstances.'" (*People v. Cross*, *supra*, 61 Cal.4th at p. 179.) "[I]f the transcript does not reveal complete advisements and waivers, the reviewing court must examine the record of 'the entire proceeding' to

7

assess whether the defendant's admission of the prior conviction was intelligent and voluntary in light of the totality of circumstances." (*Mosby*, *supra*, 33 Cal.4th at p. 361; see *People v. Cross*, *supra*, 61 Cal.4th at pp. 179-180 ["in applying the totality of the circumstances test, a reviewing court must 'review[ ] the whole record, instead of just the record of the plea colloquy,' and that 'previous experience in the criminal justice system is relevant to a recidivist's "'knowledge and sophistication regarding his [legal] rights'""""].)

In *Mosby*, *supra*, 33 Cal.4th 353 the Supreme Court found that the defendant's stipulation and waiver were voluntary and intelligent under the circumstances. (*Id.* at p. 365.) In that case, as here, the court advised the defendant that he had a right to a jury trial on the prior conviction allegation but did not advise the defendant he had rights to remain silent and to confront witnesses. (*Id.* at p. 364.) The Supreme Court noted that the "defendant, who was represented by counsel, had *just* undergone a jury trial at which he did not testify, although his codefendant did. Thus, he not only would have known of, but had just exercised, his right to remain silent at trial . . . . And, because he had, through counsel, confronted witnesses at that immediately concluded trial, he would have understood that at a trial he had the right of confrontation." (*Id.* at p. 364.) The Supreme Court stated, "'It would exalt a formula (*Boykin–Tahl*) over the very standard that the formula is supposed to serve (that the plea is intelligent and voluntary) to suggest that a defendant, who has just finished a contested jury trial, is nonetheless unaware that he is surrendering the protections of such a trial' when after being advised of the right to a trial on an alleged prior conviction the defendant waives trial and admits the prior." (*Id*. at p. 364.) In addition, in *Mosby* the "defendant's prior conviction was based on a plea of guilty, at which he would have received *Boykin–Tahl* advisements." (*Id.* at p. 365.) The Supreme Court stated that "'a defendant's prior experience with the criminal justice system' is, as the United States Supreme Court has concluded, 'relevant to the question of whether he knowingly waived constitutional rights.'" (*Ibid.*)

8

Courts in other cases involving less-than-complete *Boykin-Tahl* advisements, however, have concluded that the defendant's waivers and stipulation to a prior conviction or prison term enhancement were not voluntary and intelligent. For example, in *People v. Cross*, *supra*, 61 Cal.4th 164 the trial court did not give any of the three *Boykin-Tahl* advisements before the defendant stipulated to a prior conviction during the prosecutor's examination of the first witness and before the defendant's attorney had conducted any cross-examination. (*Id.* at p. 180.) In addition, there was "no information on how the alleged prior conviction was obtained." (*Ibid.*) The court held that under those circumstances the defendant's stipulation was not knowing and voluntary, and had to be set aside. (*Ibid.*)

Similarly, in *People v. Lloyd* (2015) 236 Cal.App.4th 49 the trial court gave only one of the three *Boykin-Tahl* advisements and the defendant's stipulation to five prior prison terms "did not immediately follow [the defendant's] trial" but occurred seven months later with new counsel. (*Id.* at p. 59.) The court also noted that there was no information in the record "about how defendant was convicted on any of the five felony cases resulting in state prison commitment" or "whether they were the result of trials or guilty pleas." (*Id.* at pp. 59-60.) In these circumstances, the court concluded that the record did not demonstrate the defendant's stipulation was voluntary and intelligent. (*Id.* at p. 60.)

And in *People v. Christian* (2005) 125 Cal.App.4th 688 the defendant pleaded guilty to the substantive offense and admitted prior felony convictions, all after the trial court gave only one of the three *Boykin-Tahl* advisements. The court stated that the defendant, unlike the defendant in *Mosby*, "had *not* just participated in a trial at which he would have exercised his right to confront witnesses, nor had he just taken advantage of nor waived this right against self-incrimination." (*Id.* at p. 697.) The court also noted that, again unlike *Mosby*, there were "no facts with regard to the circumstances of [the defendant's] prior convictions," including whether " they were by plea or trial," and the court could not "infer that he would have received advisements in his prior cases."

9

(*Ibid.*)  The court concluded that "the lack of proper advisements and waivers necessitate reversal of the judgment."  (*Id.* at p. 698.)

This case is closer to *Mosby* than *Cross*, *Lloyd*, and *Christian*.  Like the defendant in *Mosby*, Vega had finished a jury trial moments earlier where he had exercised his right not to incriminate himself by not testifying.  Vega also must have understood from the just-completed jury trial that he had the right to confront and cross-examine witnesses (a right he also, through his attorney, exercised by cross-examining all four witnesses at trial who testified for the prosecution).  Moreover, there was no mystery about the prior conviction:  it was Vega's prior conviction for felony vandalism for the benefit of a criminal street gang in case No. KA103265, in which the court was concurrently conducting a probation violation hearing.  And the court in the vandalism case gave Vega the *Boykin-Tahl* advisements in full, and Vega had placed his initials on and signed an advisement of rights, waiver and plea form (commonly known as a "*Tahl* form" or a "*Tahl* waiver form") advising him of his rights to a jury trial, a court trial, confront and cross-examine witnesses, remain silent, and produce evidence and present a defense.  In addition to signing the form, Vega stated in court in the vandalism case that he understood and waived his rights.  Considering the totality of the circumstances in this case, Vega's admission of his prior serious felony conviction was voluntary and intelligent.

C.    *The Trial Court Imposed an Unauthorized Sentence*

As noted, the trial court sentenced Vega to six years in state prison on his conviction for possession of a firearm by a felon in case No. KA104850.  At the same time, the trial court sentenced Vega on his probation violation in case No. KA103265 to a consecutive term of four years.  In the latter case, the court selected one of the felony vandalism counts as the principal term and imposed the lower term of one year and four months, plus the lower term of two years for the gang enhancement.  On the second felony vandalism count the court imposed a consecutive term of eight months (one-third the middle term of two years), plus eight months (one-third the middle term of two years)

for the gang enhancement. Finally, on the misdemeanor vandalism count, which the gang enhancement converted to a felony under section 186.22, subdivision (d) (see *People v. Briceno* (2004) 34 Cal.4th 451, 462 ["a *misdemeanor* offense committed for the benefit of a criminal street gang [can] be punished as a felony under section 186.22, subdivision (d)"]),[3] the court imposed a concurrent term of eight months (one-third the middle term of two years).[4]

The parties, after supplemental briefing, agree, as do we, that the trial court's sentence was unauthorized under section 1170.1 and California Rules of Court, rule 4.452. Section 1170.1, subdivision (a), provides in relevant part that "when any person is convicted of two or more felonies, whether in the same proceeding or court or in different proceedings or courts, and whether by judgment rendered by the same or by a different court, and a consecutive term of imprisonment is imposed under Sections 669 and 1170, the aggregate term of imprisonment for all these convictions shall be the sum of the principal term, the subordinate term, and any additional term imposed for applicable enhancements for prior convictions, prior prison terms, and Section 12022.1. The principal term shall consist of the greatest term of imprisonment imposed by the court for any of the crimes, including any term imposed for applicable specific enhancements. The subordinate term for each consecutive offense shall consist of one-third of the middle term of imprisonment prescribed for each other felony conviction for which a consecutive term of imprisonment is imposed, and shall include one-third of the term imposed for any

---

[3] Section 186.22, subdivision (d) provides: "Any person who is convicted of a public offense punishable as a felony or a misdemeanor, which is committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall be punished by imprisonment in a county jail not to exceed one year, or by imprisonment in a state prison for one, two, or three years."

[4] The minute order states that the court imposed the middle term of eight months on count three for the vandalism conviction, but not the gang enhancement. At the hearing, the court stated that it was imposing the middle term of eight months for the gang enhancement, not the vandalism conviction.

11

specific enhancements applicable to those subordinate offenses." Thus, "'when a defendant is sentenced consecutively for multiple convictions, whether in the same proceeding or in different proceedings, the judgment or aggregate determinate term is to be viewed as interlocking pieces consisting of a principal term and one or more subordinate terms.'" (*People v. Sellner* (2015) 240 Cal.App.4th 699, 701.)

The trial court sentenced Vega consecutively on his conviction for possession of a firearm by a felon and his two convictions for felony vandalism with a gang enhancements. The court, however, violated section 1170.1, subdivision (a), and California Rules of Court, rule 4.452, by failing to pronounce a single aggregate term for all of the sentences and make "a new determination of which count, in the combined cases, represents the principal term." (Cal. Rules of Court, rule 4.452(2).) In addition, the court erroneously imposed a gang enhancement for a vandalism gang allegation the People had dismissed. Finally, the court improperly imposed a concurrent term of one-third the middle term on the misdemeanor vandalism conviction. (See *People v. Quintero* (2006) 135 Cal.App.4th 1152, 1156, fn. 3 ["[b]ecause concurrent terms are not part of the principal and subordinate term computation under section 1170.1, subdivision (a), they are imposed at the full base term, not according to the one-third middle term formula"]; accord, *People v. Thompson* (2009) 177 Cal.App.4th 1424, 1432, overruled on another ground, *Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 888.)

Although an appellate court may correct an unauthorized sentence, even when the defendant did not object in the trial court (*People v. Soto* (2016) 245 Cal.App.4th 1219, 1236, fn. 10; *People v. Valenti* (2016) 243 Cal.App.4th 1140, 1173), in this case a remand for resentencing is more appropriate. The trial court will have an opportunity to exercise its discretion, and the parties may present argument, regarding the various sentencing choices and determinations to be made on remand.

**DISPOSITION**

The sentence imposed is vacated, and the matter is remanded with directions for resentencing.  In all other respects, the judgment is affirmed.


SEGAL, J.


We concur:


PERLUSS, P. J.


GARNETT, J.[*]

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.