Filed 11/27/24  P. v. Bonilla CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E082922 |
| v. | (Super.Ct.No. RIF1803069) |
| ABRAHAM DAVID BONILLA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Samah Shouka, Judge. Reversed with directions.

Marcia R. Clark, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting and Eric Tran, Deputy Attorneys General, for Plaintiff and Respondent.

A jury found defendant and appellant Abraham David Bonilla guilty of murder (Pen. Code, § 187, subd. (a))[1], attempted murder (Pen. Code, §§ 664, 187, subd. (a)), being a felon in possession of a firearm (Pen. Code, § 29800, subd. (a)(1)), possessing methamphetamine while armed with a firearm (Health & Saf. Code, § 11370.1, subd. (a)), and exhibiting a firearm during a fight (Pen. Code, § 417, subd. (a)(2)).[2]

The jury found true the enhancement allegations that during the murder and attempted murder defendant personally discharged a firearm causing death or great bodily injury. (§ 12022.53, subd. (d).) Defendant admitted suffering a prior conviction that qualified as a strike conviction (§ 1170.12, subd. (c)(1)) and a serious felony (§ 667, subd. (a)). The trial court sentenced defendant to prison for a determinate term of 17 years, four months, and an indeterminate term of 80 years to life.[3]

Defendant raises three issues on appeal. First, defendant contends the trial court violated his constitutional right to present a complete defense by sustaining the People's objection to hearsay evidence that defendant sought to have admitted under the excited

---

[1] All subsequent statutory references will be to the Penal Code unless otherwise indicated.

[2] The amended information and jury verdict incorrectly cite section 417, subdivision (a)(1), which prohibits "exhibit[ing] any deadly weapon whatsoever, *other than a firearm*." (Italics added.) Because defendant exhibited a firearm, we conclude the correct citation is to section 417, subdivision (a)(2), which prohibits "exhibit[ing] any firearm . . . in any fight."

[3] When calculating the total sentence, the trial court incorrectly stated it was "97 years and eight months in state prison," wrongly adding an additional four months to the determinate term. The determinate abstract of judgment has the correct total.

utterance exception. Second, defendant asserts the trial court erred by not advising him of his rights and the sentencing consequences prior to defendant admitting his prior convictions. Third, defendant contends there is insufficient evidence that his prior conviction qualifies as a strike. We affirm in part and reverse in part with directions.

## FACTS

On June 30, 2018, defendant attended a baby shower held at an Elks Lodge. Defendant walked into the bar area of the Lodge. Defendant argued with an unidentified man in the bar. The two men were "very close in each other's faces. They were screaming at each other, grabbing at their waistband[s]. [¶] 'Are you packing, fool?' [¶] 'Yeah, I'm fucking packing. Are you fucking packing?' [¶] . . . [J]ust going back and forth talking about their guns." The bartender ejected both men from the bar at approximately 7:02 p.m.

Defendant went to the Lodge's parking lot. Defendant removed a firearm from his waistband or pocket and moved the slide of the gun to chamber a round. Defendant checked that a round was chambered in the gun and placed the gun in his pocket.

At 7:04 p.m. defendant reentered the Lodge. Defendant sat at a table in the area where the baby shower was taking place. Thomas Vargas (Vargas) approached defendant, and either placed defendant in a chokehold or gave him a one-armed hug from behind. Defendant stood up, faced Vargas, and the two began pushing and shoving one another. At 7:06 p.m., defendant fired his gun five times. Defendant's gunshots killed his aunt and injured Vargas.

3

# DISCUSSION

## A.      HEARSAY EVIDENCE

### 1.      *PROCEDURAL HISTORY*

Defendant's sister (Sister) testified at his trial. Sister was at the baby shower. Sister's friend, Melissa Garcia (Garcia), was also at the shower. "[I]n the moments after the gunshots" Garcia was crying, flushed, and appeared scared. While in that condition, Garcia spoke to Sister.

Defense counsel asked what Garcia said to Sister. The People objected and a sidebar was held; the sidebar discussion was not reported. The trial court declared a recess and addressed the issue on the record, outside the presence of the jury.

Defense counsel offered that Sister would testify Garcia told Sister that "she saw [Vargas] with a gun, and she saw [Vargas] choking [defendant]." Defendant's trial counsel sought to introduce Garcia's statement to Sister via the excited utterance exception to the hearsay rule. The People asserted there was a lack of foundation as to whether Garcia's statements were spontaneous because it was unclear "how this conversation came up" and "how long after" the shooting the conversation occurred. The trial court excluded Garcia's statement to Sister explaining the court was "not sure [the statement was] made before there was an opportunity to fabricate and while reflective powers remain[ed] in abeyance."

2. *ANALYSIS*

a. <u>Admissibility</u>

Defendant contends the trial court erred by excluding Garcia's hearsay statement to Sister.

We apply the abuse of discretion standard of review. (*People v. Saracoglu* (2007) 152 Cal.App.4th 1584, 1588.) A spontaneous statement describes an "event perceived by the declarant," and the statement must be "made spontaneously while the declarant was under the stress of excitement caused by such perception." (Evid. Code, § 1240, subds. (a)&(b).)

" 'A number of factors may inform the court's inquiry as to whether the statement in question was made while the declarant was still under the stress and excitement of the startling event and before there was "time to contrive and misrepresent." [Citation.] Such factors include the passage of time between the startling event and the statement, whether the declarant blurted out the statement or made it in response to questioning, the declarant's emotional state and physical condition at the time of making the statement, and whether the content of the statement suggested an opportunity for reflection and fabrication. [Citations.] [Our high] court has observed, however, that these factors "may be important, but solely as an indicator of the mental state of the declarant." [Citation.] For this reason, no one factor or combination of factors is dispositive.' " (*People v. Sanchez* (2019) 7 Cal.5th 14, 40.)

Missing from the defense's foundation is the context for what prompted Garcia's statement to Sister. For example, we do not know if Garcia blurted the statement, unprompted, to Sister, or if Sister asked Garcia a series of questions prior to Garcia commenting about seeing Vargas with a gun. (*People v. Morrison* (2004) 34 Cal.4th 698, 718-719 ["responses to detailed questioning are likely to lack spontaneity"].) The timing of Garcia's statement is also unclear, in that "the moments after the shooting" could have been five minutes after the shooting or one hour after the shooting. Additionally, it is unclear how upset Garcia was. For example, it is unclear if Garcia was near the people who were shot, such that she was nearly shot, or if she was " 'merely an uninjured witness.' " (*People v. Mataele* (2022) 13 Cal.5th 372, 411 ["We also have cautioned against finding a spontaneous statement when the declarant was 'merely an uninjured witness whose excitement might wane' "].)

The trial court could reasonably conclude that there was insufficient foundation to find Garcia's statement was spontaneous. Specifically, the defense needed to provide more foundation concerning (1) the conversation, if any, between Sister and Garcia; (2) approximately how much time passed between the shooting and Garcia's statement; and (3) Garcia's level of distress. Those factors would aid in determining Garcia's state of mind.

Defendant asserts the foundation was sufficient because it established that Garcia was emotional when she spoke to Sister in the moments after the shooting. Defendant is mistaken. The " ' "crucial element" ' " in the spontaneous statement exception is " ' "the mental state of the speaker." ' " (*People v. Pirwani* (2004) 119 Cal.App.4th 770,

6

789.) The missing foundation pieces described *ante* are meant to aid in establishing Garcia's mental state. For instance, if five minutes after the shooting, Garcia was sobbing and ran up to Sister and blurted out that Vargas had a gun, that would aid in finding the statement was spontaneous because Garcia's mental state was one of abject fear. We are missing the details that would inform us of Garcia's mental state. The only information we have is that Garcia made the statement, while emotional, after the shooting occurred. With that limited foundation we conclude the trial court did not abuse its discretion by excluding Garcia's statement.

### b.    Right to Present a Complete Defense

Defendant contends that, by excluding Garcia's statement, the trial court violated his constitutional right to present a complete defense.

" 'Few rights are more fundamental than that of an accused to present witnesses in his own defense. [Citations.] [But i]n the exercise of this right, the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence.' [Citation.] Thus, '[a] defendant does not have a constitutional right to the admission of unreliable hearsay statements.' " (*People v. Ayala* (2000) 23 Cal.4th 225, 269.) The trial court's exclusion of hearsay that lacked an adequate foundation did not violate defendant's right to present a defense.

Moreover, defendant's trial counsel subpoenaed Garcia, but did not request a bench warrant when she failed to appear. Defense counsel explained that he did not pursue Garcia because "[s]he's just been uncooperative." Given that defendant did not

7

pursue Garcia as a witness, we cannot fault the trial court for Garcia's statement not being presented at trial.

Further, there was evidence presented to the jury that Vargas pointed a gun at defendant. Garcia's sister, Elisa Cabrera (Cabrera), attended the baby shower. Cabrera testified that Vargas was holding a gun when he approached defendant, and he pointed the gun at defendant. The trial court also instructed the jury on imperfect self-defense. (See generally (*People v. Schuller* (2023) 15 Cal.5th 237, 243 [explaining imperfect self-defense].)

In sum, defendant was not denied an opportunity to present a complete defense because (1) the trial court properly excluded the hearsay evidence; (2) defendant did not pursue Garcia as a witness; and (3) defendant presented imperfect self-defense evidence to the jury.

## B. ADVISEMENT OF RIGHTS

### 1. *PROCEDURAL HISTORY*

#### a. Information

In an information filed on December 30, 2019, the People alleged defendant suffered the following prior strike conviction: On "4/26/2001 in the Superior Court of the State of California, for the County of Riverside, convicted of the crime of POSSESS FIREARM WITHIN 10 YEARS OF MISDEMEANOR AN DCRIME (*sic*) FOR BENEFIT OF A GANG . . . in violation of section 1202.5(b)(3) of the Penal Code and section 186.22(b) of the Penal Code, within the meaning of Penal Code section 667, subdivisions (c) and (e)(1), and 1170.12, subdivision (c)(1)." The People further

alleged that the forgoing constituted a prior serious felony conviction. (§ 667, subd. (a).)

Contrary to the information, in 2001, section 1202.5, subdivision (b), addressed the collection of fines—it did not set forth a substantive offense. We suspect the People intended to cite section 12021, subdivision (c), which, in 2001, prohibited possession of a firearm within 10 years of certain misdemeanor convictions.

In an amended information, the People did not include the prior firearm conviction that was alleged in the original information, *ante*. Instead, the People alleged defendant suffered the following prior conviction: On "April 26, 2001 in the Superior Court of the State of California, for the County of RIVERSIDE, [defendant was] convicted of the crime of CRIMINAL STREET GANG ACTIVITY, a serious and violent felony, in violation of section 186.22(a) of the Penal Code." The People alleged the prior gang conviction qualified as a strike.

In the amended information, the People also alleged a prior serious felony conviction. (§ 667, subd. (a).) Specifically, the People alleged that on April 26, 2001, a gang enhancement allegation was found true against defendant. (§ 186.22, subd. (b)(1).) The People did not allege to what substantive offense the gang allegation was attached.

### b.    Admission

The trial on the prior offense allegations was bifurcated from the substantive charges relating to the murder at the baby shower, and defendant waived a jury for the prior conviction allegations. When the bench trial on the priors was called, defendant's

9

trial counsel announced that defendant was "prepared to admit the prior." The following exchange occurred:

"The Court: Okay. All right. Let me see here. [¶] [Defendant], is it true that back on April 26th, 2001, you were convicted of the crime of—the violation of Penal Code Section 186.22(a), which is active participation in a criminal street gang?

"The Defendant: Yes, your Honor.[4]

"The Court: All right.

"[Prosecutor]: Your Honor, I'm looking at the abstract of judgment.

"The Court: Yes.

"[Prosecutor]: I believe it was—Count 1 was a PC—I'm sorry, it was Count 2—

"The Court: Can I see the abstract of judgment?

"[Prosecutor]: May I approach?

"The Court: Yes. [¶] Thank you. I'm going off the Information. [¶] Oh, possession of a firearm with a gang allegation?

"[Prosecutor]: Yes.

"The Court: Okay. [¶] [Defendant], is it true then back on June—I have here June 1st of 2001, in front of Judge Paul Zellerbach, in this county, were you convicted of a violation of Penal Code section 12021, subdivision (c), possession of a firearm?

"The Defendant: Yes, your Honor.

---

**4** Per defendant's probation report, he has not suffered a conviction under section 186.22, subdivision (a).

"The Court: And did you also admit the allegation that you were an active participant in a criminal street gang at the time that you committed Count 2, possession of a firearm?

"The Defendant: Yes.

"The Court: All right. The Court accepts the admission. I'll give this back to you.

"[Prosecutor]: Thank you.

"The Court: [Defendant], your decision to waive your right to have a jury trial decide whether or not—a jury decide whether or not to determine if you have suffered a strike conviction, is that a decision you reached of your own free will?

"The Defendant: Yes.

"The Court: All right. So then I'm going to refer the matter out for a report from probation for a sentencing recommendation."

### c. Sentencing

At sentencing, the following exchange took place:

The Court: "Did you allege a nickel prior? I see it addressed here on the probation report, but I didn't see it on the Information.

"[Prosecutor]: I did not see it on the Information either. That's why I did not request it.

"The Court: Okay. Then I won't address that at all."

Later at the sentencing hearing, the following exchange occurred:

11

Prosecutor: "Looking at the Information, it actually—the nickel prior is alleged on there. I'll submit on it. It is on there.

"The Court: Okay. All right. I'll just go ahead and impose it, but stay it—or strike it. I'll strike the nickel prior."

### 2. *ANALYSIS*

Defendant contends the trial court erred by failing to advise him of (1) his right to confront witnesses, (2) his right against self-incrimination, and (3) the consequences of his admission. The People assert defendant, by failing to object, forfeited the portion of his contention concerning the consequences of his admission. Our high court has "held that because 'advisement as to the consequences of a plea is not constitutionally mandated,' 'the error is waived absent a timely objection.' " (*People v. Villalobos* (2012) 54 Cal.4th 177, 182.) Defendant did not object in the trial court thereby forfeiting the portion of the contention pertaining to the consequences of the admission. Therefore, we will focus our analysis on the piece of defendant's contention concerning the failure to advise him of his constitutional rights.

"When a criminal defendant enters a guilty plea, the trial court is required to ensure that the plea is knowing and voluntary. [Citation.] As a prophylactic measure, the court must inform the defendant of three constitutional rights—the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusers—and solicit a personal waiver of each." (*People v. Cross* (2015) 61 Cal.4th 164, 170.) "[T]he same requirements of advisement and waiver apply when a defendant admits the truth of a prior conviction allegation that subjects him to increased

12

punishment." (*Ibid.*) The trial court did not advise defendant of his rights prior to defendant admitting the prior conviction allegation. Accordingly, the trial court erred.

The trial court's "error is not reversible per se. Instead, the test for reversal is whether 'the record affirmatively shows that [the admission] is voluntary and intelligent under the totality of the circumstances.' " (*People v. Cross*, *supra*, 61 Cal.4th at p. 171.) "[I]t is well established that, while there is no single ' "best" recidivist trial procedure,' due process requires 'adequate notice' and 'an opportunity to challenge the accuracy and validity of the alleged prior convictions.' [Citations.] When a defendant forgoes this basic protection, his or her decision must be 'knowingly and intelligently made.' " (*Id.* at p. 173.)

The amended information alleged a prior conviction of being an active participant in a criminal street gang (§ 186.22, subd. (a)) and a gang enhancement (§ 186.22, subd. (b)(1)(B). The trial court asked defendant if he admitted to suffering prior convictions for (1) being an active participant in a criminal street gang (§ 186.22, subd. (a)); (2) possessing a firearm (§ 12021, subd. (c)); and (3) being an "active participant in a criminal street gang at the time that" he possessed the firearm—a hybrid of section 186.22, subdivisions (a) and (b)(1).

When the People handed the abstract of judgment to the trial judge, there was an implicit motion by the People to amend the amended information with the prior conviction for possession of a firearm (§ 12021, subd. (c)). Defendant was not arraigned on a second amended information. Defendant was not advised of his constitutional rights prior to admitting the prior conviction allegations. Given the

13

procedural confusion and complete lack of notice of the orally amended allegations, we cannot conclude that, under the totality of the circumstances, defendant's admission was knowing and voluntary.

The People assert that defendant was aware of his rights to have a jury trial, confront witnesses, and remain silent because (1) defendant had just been through a trial on the substantive charges pertaining to the murder at the baby shower, and (2) defendant has a history of being a defendant in criminal cases. (See *People v. Lloyd* (2015) 236 Cal.App.4th 49, 59-60 [similar issue].) The trial on the prior conviction allegations was bifurcated. Due to that bifurcation, defendant could have reasonably believed his trial rights ended when the jury was dismissed. Defendant may not have understood that his rights continued through the bifurcated proceeding. This is particularly true given that the prosecutor and judge added allegations without a formal amendment and arraignment. If defendant did have familiarity with criminal procedure and an understanding of his rights, he may have questioned what he knew given the improper procedures. Accordingly, we are not persuaded that the jury trial on the substantive offenses and defendant's criminal history affirmatively demonstrate defendant was aware of both his rights and the allegations in the orally amended information at the time he admitted the prior convictions.

14

We will vacate defendant's admissions to the prior conviction allegations and order an arraignment and a retrial or rehearing on the prior conviction allegations. Consequently, we will also reverse defendant's sentence. (See *People v. Sifuentes* (2011) 195 Cal.App.4th 1410, 1422 [similar disposition], disapproved on other grounds in *People v. Farwell* (2018) 5 Cal.5th 295, 304, fn. 6].)

C.    QUALIFYING STRIKE CONVICTION

1.    *BACKGROUND*

In 2001, defendant was convicted of possessing a firearm within 10 years of a misdemeanor conviction (§ 12021, subd. (c)(1)), along with a gang enhancement (§ 186, subd. (b)(1)). The crime of possessing a firearm within 10 years of a misdemeanor conviction is a wobbler. (§ 12021, subd. (c)(1) ["shall be punishable by imprisonment in a county jail not exceeding one year or in the state prison"]; see generally *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 902, fn. 9 [defining a wobbler].) Defendant's probation report reflects that, in 2001, he was sentenced to two years in state prison, thus making his firearm conviction a felony. A felony conviction qualifies as a strike when the felony was committed to benefit a criminal street gang. (§ 1192.7, subd. (c)(28); *People v. Briceno* (2004) 34 Cal.4th 451, 456.) Thus, the gang enhancement caused defendant's firearm conviction to be a strike.

2.    *ANALYSIS*

Defendant contends the statutory definition of a "criminal street gang" has narrowed since 2001 (Assem. Bill No. 333 (2021-2022 Reg. Sess.) § 3). Defendant

asserts there is insufficient evidence that his prior firearm conviction and gang enhancement qualify as a strike under the current law.

The issue of whether the narrowed statutory definition for a "criminal street gang" applies to prior conviction allegations is currently pending before the Supreme Court in *People v. Fletcher*, review granted September 27, 2023, S281282. The *Fletcher* case was from this court. In *Fletcher*, this court held that the narrowed statutory definition does not apply to prior convictions. (*People v. Fletcher* (2023) 92 Cal.App.5th 1374, 1378-1379.)

In another case presenting the same issue, this court explained that the change to the gang enhancement statute was prospective only, and the defendant's prior conviction was "long since final [and] [w]hen it became final, it was a strike." (*People v. Scott* (2023) 91 Cal.App.5th 1176, 1184, review granted September 27, 2023, S280776.) This court concluded that the change to the statutory definition "cannot change the status of [the] defendant's final [prior] conviction as a strike." (*Ibid.*)

We follow our precedent in *Fletcher* and *Scott*. We conclude that the People were not required to prove that defendant's 2001 conviction would qualify as a strike under the current law. It is sufficient that it was a strike in 2001.

## DISPOSITION

Defendant's convictions on the substantive offenses are affirmed. Defendant's admissions to the prior conviction allegations are vacated. The trial court is directed to arraign defendant on the amended prior conviction allegations and conduct a retrial or rehearing of the prior conviction allegations. Defendant's sentence is reversed. The

16

trial court is directed to resentence defendant following the retrial or rehearing on the prior conviction allegations.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
J.

We concur:

McKINSTER
Acting P. J.

FIELDS
J.

17